JOHNSON *vs*. THE STATE OF GEORGIA.

1. Motions for continuance are addressed to the sound discretion of the presiding judge, and that discretion will not be controlled unless abused.

(a). Whilst on a motion for a continuance on the ground of the absence of a witness, it is not permissible to inquire what other witnesses will testify in respect to the subject-matter of the absent witness' testimony, yet a counter-showing may be made as to what will be the testimony of such witness himself, and to that end it is admissible to show what he testified on a former trial touching the same facts.

2. Even if at the same time and place one person was killed and another assaulted with intent to murder, an acquittal of the former offense would hardly be a good plea in bar of a trial for the latter. Certainly not when the homicide and assault occurred at different places.

3. When jurors are put upon their *voir dire* in criminal cases, only the statutory questions can be asked them. If further investigation is desired, they should be put upon the court as a trior.

4. What the person assaulted said, though half unconsciously, so soon as she was found on the day of the assault, at the moment of the restoration of sensibility, is part of the *res gestæ*, and admissible.

5. The charge of the court was a fair exposition of the law, and the verdict was not unsupported by evidence.

Criminal law. Continuance. Pleadings. Constitutional law. Jurors. Evidence. *Res gestæ*. New trial. Before Judge HILLYER. Clayton Superior Court. September Term, 1879.

On September 18th, 1878, Mrs. Farmer was murdered and an assault committed on her daughter, Miss Farmer, which came near resulting in another murder. Neighbors discovered the Farmer house to be on fire, and on going thither and extinguishing the flames, Mrs. Farmer was found murdered. On search being made, Miss Farmer was found about a hundred yards distant from the house badly injured. She had been struck on the head with some hard instrument, and seemed partially, if not entirely,.

unconscious. Several witnesses testified that they did not believe her conscious. She was taken up and carried to the house. When found she was groaning. She was asked who hurt her, and said nobody. On the way to the house she several times ejaculated, " Oh, my poor head !" and " Oh, Julia !" It was some days later before full consciousness returned. Julia Johnson was indicted both for the murder of Mrs. Farmer and the assault with intent to murder Miss Farmer. On the trial of the murder case she was acquitted. When the other case was called, defendant moved for a continuance. The grounds of the motion were that she had relied entirely on R. S. Jefferies, Esq., who had represented her in the murder trial, to represent her also in this, and that he had only a short time previously notified her that he could not do so, thus leaving her unprepared with her defense; also, that certain material witnesses were absent. As to what those witnesses would testify, the state made a counter-showing by proving what they testified on the murder trial. The court refused the continuance.

Defendant filed a plea of former acquittal, based on the verdict in the murder trial, claiming that the circumstances pointing to her as the perpetrator (nearness to the scene, possession of goods alleged to have been stolen from the house, etc.), applied alike to both cases. The court struck the plea, on motion of the state's counsel.

In making up the jury, the defendant's counsel proposed to ask the jurors questions other than those provided by the statute. These questions pertained to their presence at the coroner's inquest over Mrs. Farmer, or on the grand jury which found the indictment for murder, or at the trial thereof. Counsel stated that they had just been appointed to represent the defendant, and had no other means of testing the competency of the jurors. They, however, disclaimed any known ability to disprove the answers of the jurors to questions put to them on their *voir dire*. The court refused to allow the questions.

The court allowed the expressions of Miss Farmer at. the time when she was found to be proved.

The entire evidence is not necessary to be set out. The chief point of contest in the case was the identity of the defendant as the criminal. On this point Miss Farmer testified as follows:

Witness had come to the house and was in the front porch and her mother in the front door, when defendant came and said she wanted to get some cherry bark, and defendant and witness went together to the tree on the bluff to get the bark—defendant carrying the chop axe—chopped off the bark, and they had just started back to the house, witness walking in front, when she was stricken, and remembered nothing more occurring then nor for a good while afterwards. She knows no one else was present but defendant and herself. She had seen defendant twice before, once at the well sometime before, and again a day or two previous to the assault when defendant came to the house to get butter and eggs. On all these occasions defendant had worn a Scotch homespun dress. She had never heard defendant called by name; had been told she lived on Calhoun's place. Witness usually wore spectacles—did not that day. Negro women looked as. much alike to her as a gang of black-birds. She had failed to identify defendant on the murder trial when asked to point her out among three or four negro women, defendant being then dressed differently from what she had been on the previous occasions. She didn't want to make the same mistake again; her brother and others had told her what kind of clothing was now worn by Julia. She had seen but one negro woman inside the bar on coming in that morning; knew defendant was to be tried, and knew in reason that was defendant. Had kept her eyes on her so as to know her. Defendant had changed hats. Witness' memory had never been as good since she was wounded. She thought would never be again. She had a dizzy feeling in her head all the time. Learned on

regaining her consciousness' that defendant had been arrested charged with the murder of her mother and the injuries to herself. She positively remembered that defendant was the person with her and who struck her. She had lived at the same place fifty years. Did not remember when the railroad was built, nor when the war began, nor when Atlanta was captured, nor when the battle at Jonesboro was fought, nor when the negroes were freed. Is sixty years old.

The court was requested to give the following charge: " Before the jury can convict the prisoner on the testimony of Elizabeth Farmer, they must believe to the exclusion of a reasonable doubt that she positively remembers that, as a fact within her own knowledge, the prisoner then known to her as the identical person now on trial, committed the assault on her charged in the indictment." This request the court gave, but further charged the jury in connection therewith as follows: " But if you are satisfied that she had in her mind and memory a knowledge of the facts testified by her, and that she truly stated those facts, and recognized the prisoner as the perpetrator, then you would be authorized to believe such facts against the prisoner. The inquiry as to each person testifying on the trial is, do you believe the witness? If you do not, you ought not to base a verdict on such evidence; but if you do believe the witness, you would have no right arbitrarily to set aside the testimony of such witness."

The jury found defendant guilty. She moved for a new trial, assigning error in each of the rulings set out above. The motion was overruled, and defendant excepted.

J. S. BOYNTON; C. W. HODNETT; J. A. ANDERSON; R. T. DORSEY, for plaintiff in error.

B. H. HILL, Jr., solicitor-general, for the state.

JACKSON, Justice.

The verdict in this case was guilty, a motion was made for a new trial, which was overruled, and the defendant excepted.

1. The first ground is that the court erred in overruling the defendant's motion to continue. Motions to continue are left in the discretion of the superior court to a great extent, and must be so left from the very nature of the business—the witnesses sworn, the defendant's manner, and all the circumstances of a *nisi prius* trial. The presiding judge can decide such matters much more satisfactorily and justly than we can, and therefore this court rarely interferes with his discretion in such matters.

The court in this case permitted a counter-showing in respect to what the witnesses would swear. In *Horne vs. The State*, February term, 1879, it was ruled that a counter-showing should not be allowed to the point that *other witnesses* would swear to a state of facts different from what the witness who was absent would swear; but this is not that case. Here the witnesses swear what *these* witnesses had already sworn on a former trial, and of course the presumption is that they will swear the same thing again. The statute allowing a counter-showing is broad, and while the judge may not try the merits of the case on an issue of continuance, and thus take from the defendant the right of trial by jury practically, yet he may try all such issues as the question of the *subpoena* of the witness, his sickness, his absence from the county, or what he would swear if present, drawn from what he did swear on another occasion when the same transaction was in question. And such is the principle intended to be announced in the case decided at the February term, 1879. Code, §3531.

2. The defendant pleaded former jeopardy in this, that defendant had been acquitted of the murder of the mother of the subject of this assault in the transaction which was the same in both cases. The plea was properly overruled

and stricken.   Even if the mother had been killed at the very time and place when and where the daughter was assaulted, it would not have been the same offense, and the plea would hardly be held good ; but the mother was killed at the house, the daughter some distance from the house was assaulted, which puts this case beyond doubt. 47 *Ga.,* 568.

3.  The rule is settled that no questions but those fixed by the statute will be allowed, unless the juror is put upon triors, the judge being now the trior ; therefore the court was right not to permit the questions outside of the statute to be asked the jurors on the *voir dire—Cox vs. The State,* last term, and many preceding cases.

4.  What the person assaulted said, though half unconsciously, so soon as she was found on the day of the assault, at the moment of the restoration of sensibility, is part of the *res gestæ* and admissible.   32 *Ga.,* 672.

5.  The charge of the court, including his addendum to the defendant's request, appears to us to be a fair exposition of the law, and there is evidence enough to sustain the verdict.   The question was whether or not the witness who swore to the transaction, and who identified the defendant as her assailant was worthy of credit, her mind and memory considered, and the jury found that she was, and the presiding judge affirms the finding, and the law, therefore, leaves us no option but to affirm it too.

Judgment affirmed.