29601.   WEBB *v.* THE STATE.

*R. E. Brown, J. W. Bloodworth, A. Russell Ross,* for plaintiff in error.

*Charles H. Garrett, solicitor-general,* contra.

MacIntyre, J. The defendant was indicted on three counts of murder and two counts of assault with intent to murder, arising from an automobile accident in which three persons were killed and two persons were injured. He was found guilty of involuntary manslaughter in the commission of an unlawful act under the first three counts, which involved the deaths of the victims, and was sentenced to one year under each, the sentences to be cumulative. He was found guilty of assault and battery under counts 4 and 5, and was given a sentence of twelve months under each, the sentences to run concurrently and to be served at the expiration of the sentence under count 3. The defendant's motion for new trial was overruled, and he excepted.

1. The evidence authorized the verdict.

2. The judge charged the jury in part as follows: "Each count in this indictment presents a separate and distinct charge by the State against the defendant. You will consider and determine the defendant's guilt or innocence upon each count in this indictment; and as the court has said, each count contains a separate and distinct charge against the defendant and it will be your duty to consider each and every count in this indictment separately and to return a verdict as to each and every count in this indictment, unless, gentlemen, you should find the defendant not guilty under the law which the court will hereafter give you in charge, in which event you may return one general verdict of not guilty, in the form which the court will hereafter give you." On this excerpt the defendant assigns error because: "(a) Said charge was erroneous as a matter of law, because under the indictment and the evidence the three persons alleged to have been killed in counts 1, 2, and 3 of the indictment, and the two persons alleged to have been assaulted in counts 4 and 5 of the indictment, were riding in an automobile together, and were struck by an automobile driven by the defendant, at one and the same time, at one and the same place, and all being one and the same transaction, and being the

result of one single stroke, which under the law could have amounted to only one offense against the State, but which were treated by the court under said charge as being separate and distinct charges, amounting to separate and distinct offenses, authorizing separate and distinct verdicts, carrying separate and distinct penalties upon each. (b) Said charge was confusing and misleading to the jury because it tended to, and probably did cause the jury to believe that they were authorized and required to consider each count with a view of acquitting the defendant on all counts, acquitting him on some of them, or convicting him on all counts, or on some of them, and to treat each of the counts as separate and distinct trespasses against the individual persons alleged to have been killed in counts 1, 2, and 3, and the persons alleged to have been assaulted in counts 4 and 5 of the indictment. (c) Said charge was further confusing and misleading to the jury because nowhere in the entire charge did the court ever explain to the jury that if under the evidence they found as a matter of fact that the persons alleged to have been killed in counts 1, 2, and 3, and the persons alleged to have been assaulted in counts 4 and 5 of the indictment, were the victims of one and the same stroke, at the same time and place, and all the same transaction, there could be but one offense against the State."

There was no demurrer to the indictment, and under the ruling in *Webb* v. *State,* 177 *Ga.* 414 (170 S. E. 252), s. c. 47 *Ga. App.* 505 (170 S. E. 827), it seems that it would have availed the defendant nothing to have demurred to the same. "In the case of *Gilbert* v. *State,* 65 *Ga.* 449, it is said: 'If two distinct offenses are charged in the same indictment, and no exception is taken thereto by demurrer, the defendant may, nevertheless, demand that the State elect on which it will proceed. If the indictment shows the difference in the charges, the election may be made when it is read; if the difference appears from the evidence, the election may then be made; but it must be called for before the defendant opens his case.' " *Webb* v. *State,* 47 *Ga. App.* 505, supra. The defendant did not demand that the State elect on which count or counts it would proceed, and there is nothing in the record to show that the State's failure to elect in any way confounded the defendant in his defense, or in any way impeded him in his challenge to the jury. See also *Martin* v. *State,* 55 *Ga. App.* 166 (189 S. E. 624).

The defendant bases his contention on *Dean* v. *State,* 9 *Ga. App.* 571 (71 S. E. 932), in which several articles which were owned by different owners were stolen at the same time and place, and in which it was held that there was but one larceny, the court quoting as follows: "In principle the wrong as a crime is to the public, not to the private owner. The thief ordinarily does not care, and often he does not know, whose are the things he is taking. . . Still, where many articles are stolen at one time, there is only one theft, whether the ownership is in one person or many." This principle is well founded and is sustained by many competent authorities as to cases where there is a larceny committed at one time of articles owned by different people. The underlying theory for this seems to be that the thief *intended to commit but one larceny.* Being unable to find any Georgia cases in point with the instant case, we think the reasoning in State *v.* Laughlin, 180 Mo. 342 (79 S. W. 401), is well founded. In that case the defendant, a public official, was indicted separately for embezzlement of two trust funds, though the embezzlement in both instances was committed by one act of conversion. It was held that the single act constituted two separate and distinct offenses in that the two different trusts were violated. In such a case the defendant, as a trust officer, had reason to *know that he was violating two separate trusts.*

In the instant case, in the commission of an unlawful act the defendant drove his automobile into another automobile causing a wreck in which three persons were killed and two were injured, and he was convicted under three counts of involuntary manslaughter in the commission of an unlawful act, and two counts of assault and battery. "A reckless disregard of human life may be the equivalent of a specific intent to kill. . . The presumption of malice may arise from a reckless disregard of human life." *Dennard* v. *State,* 14 *Ga. App.* 485, 488 (81 S. E. 378). "Assault and battery may be committed by striking another with an automobile intentionally, or by driving the machine so recklessly as to justify a jury in finding that there was a reckless disregard of human life and safety." *Tift* v. *State,* 17 *Ga. App.* 663 (88 S. E. 41). See also *Looney* v. *State,* 41 *Ga. App.* 495 (2) (153 S. E. 372); *Gallery* v. *State,* 92 *Ga.* 463 (17 S. E. 863). Thus it is shown that a specific intent or a presumption of malice may arise from a reckless disregard of human life. "The crime charged in this

case comes under that class of criminal cases in which proof that the defendant intended to do the prohibited act is all that is necessary, for ignorance of the law is no excuse. If the accused did the act, the law presumes he knew it was criminal, and that he knew the natural and necessary consequences that would result." *Cornell* v. *State,* 64 *Ga. App.* 202, 206 (12 S. E. 2d, 378). "Every person is presumed to intend the natural and necessary consequence of his acts." *Tift* v. *State,* supra.

It is well to consider that a person driving along a public highway can be presumed to know that he will meet and pass other vehicles which are lawfully using the highway, and that these vehicles may carry one or many persons. There may be an automobile in which there is only the driver, while on the other hand there may be a bus in which twenty or more persons are riding. In presuming that a person "knew the natural and necessary consequences that would result," we think it follows that the defendant in the instant case can be presumed to have known that he would collide with an automobile in which five persons were riding, and that each might be affected by his unlawful act as a natural and necessary consequence. We see no reason why the presumption of knowledge of the exact consequences can not be imputed to the defendant as well as the presumption of malice and intent. By his unlawful act he placed himself in the position of impliedly intending to commit the crime, and, as he "knew the natural and necessary consequences that would result," it follows that he intended (by implication) to drive the automobile into the other car, and that he had knowledge (by implication) that the other carried five persons, three of whom would be killed and two injured by his unlawful act. In looking past the act to the result we think this was not a situation where the intent was single, as in the case of a thief who at one time stole several articles owned by different persons, but it was a situation where the intent was several, as in the case of the public official who, by one act of conversion, committed separate and distinct offenses by the embezzlement of two separate trusts. We think the defendant was accountable for every offense charged in the indictment, and that the court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., concurs.*

GARDNER, J., dissenting. 1. The defendant was convicted in

each count on an indictment which contained five counts. The first three counts charged murder in the killing of three separate persons, one deceased being named in each count; the last two counts charged assault with intent to murder two separate persons, naming one in each count. The jury returned a verdict of guilty of involuntary manslaughter under counts 1, 2, and 3, and verdicts of guilty of assault and battery under counts 4 and 5. He was sentenced to serve a sentence on each count, 1, 2, and 3 consecutively, and a sentence of 12 months on counts 4 and 5 concurrently. He filed a motion for new trial which was overruled and he excepted. The evidence developed that at the time of the transaction the defendant was illegally operating a truck which he drove against an automobile in which the five persons named in the five counts of the indictment were travelling. The persons named in the first three counts died as a result of injuries received in the collision. The two mentioned in the last two counts, though injured, survived. The court charged the jury that they might find the defendant guilty of three different offenses of illegal homicide and in addition also find him guilty of two separate offenses of assault and battery under counts 4 and 5.

Under the record, the question presented is whether the defendant was guilty of one offense or of five. This presents a question about which there has been much learned discussion and great diversity of opinion. In 22 C. J. S. 414, § 278, we find this statement: "While the courts are in hopeless conflict when it comes to a solution of the problem of identity of offenses, it is generally held that the prohibition of the common law and of the constitutions is against a second jeopardy for the same 'offense,' that is, for the identical act and crime." In 14 Am. Jur. 957, § 278, after discussing the question and citing quite a number of authorities, we find this statement: "In a murder case it is not necessary for the plea to state that the person alleged in the first indictment to have been killed was the person named in the second indictment, because two persons might have been killed by the same criminal act." See also 113 A. L. R. 215, 222, note; State of Minnesota v. Fredlund, 200 Minn. 44 (273 N. W. 353). Our Supreme Court in an early decision, *Roberts* v. *State,* 14 *Ga.* 8 (58 Am. D. 528), dealt with the question, though that was not a case of homicide. In Van Epps' annotation to *Copenhaven* v. *State,* 15 *Ga.* 264, we find

this statement: "A plea that defendant was put on trial for the same transaction under valid indictment for simple larceny, and the case nol-prossed, and withdrawn from the jury without his consent, is good in bar of a subsequent indictment for burglary. Having been in jeopardy of liberty once, he can not be put in jeopardy again for the same transaction, save on his own motion for a new trial after conviction, or in case of mistrial." Citing *Jones* v. *State,* 55 *Ga.* 625 (3), 626; *Roberts* v. *State,* supra; *Holt* v. *State,* 38 *Ga.* 187; *Black* v. *State,* 36 *Ga.* 447 (91 Am. D. 772). "If the prosecution under the second indictment involves the same transaction, which was referred to in the former indictment, and it was or might have properly been the subject of investigation under that indictment, an acquittal or conviction under the former indictment would be a bar to a prosecution under the last indictment. This rule is sometimes called 'the same-transaction test.' The latter rule has been the one adopted and generally followed in this State. In *Roberts* v. *State* [supra], Judge Starnes, after stating that there seemed to be some difficulty about applying in all cases the rule known as the same-evidence test, says: 'To avoid any confusion on this subject, we adopt the rule, as it is otherwise more generally and perhaps more accurately expressed, viz.: that the plea of autrefois acquit or convict is sufficient whenever the proof shows the second case to be the same transaction with the first.' The rule thus laid down was applied in the following cases: *Holt* v. *State,* 38 *Ga.* 187; *Jones* v. *State,* 55 *Ga.* 625; *Buhler* v. *State,* 64 *Ga.* 504; *Goode* v. *State,* 70 *Ga.* 752; *Knight* v. *State,* 73 *Ga.* 804; *Knox* v. *State,* 89 *Ga.* 259 [15 S. E. 308]. See also, in this connection, *Crocker* v. *State,* 47 *Ga.* 568; *Johnson* v. *State,* 65 *Ga.* 94 (2); *Craig* v. *State,* 108 *Ga.* 776 [33 S. E. 653]; *McWilliams* v. *State,* 110 *Ga.* 290 [34 S. E. 1016]; *Gully* v. *State,* 116 *Ga.* 527, 529, 530 [42 S. E. 790]. And see [*Bell* v. *State*], 103 *Ga.* 397 [30 S. E. 294, 68 Am. St. R. 102]; [*Pat* v. *State*], 116 *Ga.* 92 [42 S. E. 389]; *McIntosh* v. *State,* 116 *Ga.* 543, 545 [42 S. E. 793]." In *Lowe* v. *State,* 57 *Ga.* 171, the court held: "An indictment for simple larceny in stealing two hogs at the same time and place, though alleging that one is the property of one person, and the other of another, covers but one transaction, and charges but one offense, and judgment thereon will not be arrested. . .

Proof that defendant stole one of the hogs is sufficient to convict under such an indictment."

Judge Hill, speaking for this court in *Dean* v. *State, 9 Ga. App.* 571 (71 S. E. 932), said: "Where several articles are stolen at one time, there is only one larceny, whether the ownership is in one person or in different persons. The State in such case may charge in one indictment the larceny of all the articles stolen, alleging ownership according to the fact." The court in elaborating on the question made this significant statement: "To allow a separate prosecution in each case of distinct ownership would be to regard the larceny as simply a trespass against the individual owner, and not a trespass against the public law, and would be contrary to both the letter and the spirit of the constitutional guaranty." We think this is the reason the courts of our State are aligned with the authorities which hold that in an identical act there can be but one offense under our constitutional provision as expressed in the Code, § 2-108. Again, this court, in *Whitmire* v. *State, 40 Ga. App.* 235 (149 S. E. 169), where the defendant was tried for assault with intent to murder upon eight different persons and the evidence developed that he fired one shot from a pistol, striking one person, approved the following charge: "I charge you that before you would be authorized to convict the defendant, you must be satisfied, from the evidence in the case and the defendant's statement, that the defendant on trial, at the time of the assault, if you find there was one, had an intent to kill the party or parties assaulted, *or some one of them.*" In view of the authorities above cited it is the law of this State that the facts of the record reveal that but one offense was involved.

2. But it is contended by the State that since there was no demurrer to the indictment the defendant is estopped to raise the question after verdict. I do not think this position is tenable. See *Dean* v. *State,* supra; *Lowe* v. *State,* supra; *Lee* v. *State,* 66 *Ga. App.* 613 (18 S. E. 2d, 778) ; *Tooke* v. *State, 4 Ga. App.* 495 (61 S. E. 917). It is true that homicide was not involved in those cases, but the same principle was involved. The writer does not think that a demurrer to the indictment would have been sustainable. This is true for the reason that in such a case as the one at bar the State could have alleged the homicide in the same count, and it gained no advantage by alleging the deaths of persons killed

in separate counts, and neither would the defendant's rights be prejudiced by the method of pleading which the State selected. To prove any one of the homicides the State was obliged to exhaust the entire evidence of the transaction or act. The case would be made out if the State proved the death of the three persons or any one of them. It could not have been more completely made out by proving three deaths instead of one, under the authorities cited above. The State had a right, if it chose, to charge the death of all three, either in one count or in several counts, but it was not essential, under the law, to prove the death of all three. One would have been sufficient. It therefore follows that this contention of the State that because the defendant did not file a demurrer which he could not have maintained, as we hold, is unsound. Counsel for the State, in support of his contention, cites *Martin* v. *State,* 55 *Ga. App.* 166 (2) (189 S. E. 624). The facts of that case are not in conflict with what is here said. If so it must yield to the older decisions of the Supreme Court above cited. In the *Martin* case there were two indictments, one for burglary and one for robbery. Those were separate and distinct offenses, and it does not appear that the evidence in the one was essential to support the other. In *Copenhaven* v. *State,* 15 *Ga.* 264, supra, this question was dealt with, the court using this expression: "And that the record showed that to make proof of the felonious intent, so charged, evidence had been submitted which proved the robbery in question to have been committed." Such does not appear from the *Martin* case, supra.

3. Since the injuries alleged and proved regarding counts 4 and 5 resulted from the identical acts which are alleged to have caused the deaths in the first three counts, the assault was necessarily involved in and became merged into and lost its identity in the proof of the completed act. There can be no assault with intent to murder in the completed act of murder involving an identical transaction. The lesser merges into and becomes a part of the completed act. The court should have charged the jury that there was but one offense involved. If the evidence showed, according to the allegations of the indictment, that the illegal conduct of the defendant caused the death of any one of the persons alleged to have been killed, he would be guilty of criminal homicide and there would be proved one offense. If the State was unable to prove that

death did not result from the injuries thus received then the judge should have charged as to the lesser grades of homicide which were embraced within the homicide counts. Under the facts of this case assault with intent to murder and assault and battery were embraced in the homicide counts. So far as the record shows the last two counts were surplusage. *Smith* v. *State,* 127 *Ga.* 262 (56 S. E. 360) ; *Walker* v. *State,* 136 *Ga.* 126 (70 S. E. 1016) ; *Baynes* v. *State,* 135 *Ga.* 219 (69 S. E. 170).

DECIDED DECEMBER 4, 1942.