32068. MONTGOMERY *v.* THE STATE.

Decided September 25, 1948. Rehearing denied December 15, 1948.

*Stone & Stone,* for plaintiff in error.

*R. A. Patterson, Solicitor-General, Miller & Head,* contra.

MacIntyre, P. J. Essie B. Montgomery was indicted for murder for killing Leroy Engram, an innocent bystander, and was separately indicted for an assault with intent to murder by shooting Carlton Jones while he and Jones were engaged in a conflict with pistols. The cases were tried together by agreement, and the jury found the defendant not guilty of murder by killing Engram, the bystander, but returned a verdict of guilty of an assault with intent to murder Jones.

The defendant contends that the verdicts related to the same transaction, and that the verdict of guilty of an assault with intent to murder Jones is inconsistent with the verdict of acquittal for the murder of Engram; and that as a result the verdict of guilty for an assault with intent to murder cannot stand. The State contends, however, that if the evidence authorized the jury to find that, in the pistol conflict between the defendant, Essie B. Montgomery, and Jones, the defendant fired first, and that Jones, while defending himself from a murderous attack by

the defendant, in shooting at the defendant accidentally shot and killed Engram, an innocent bystander, the verdict acquitting the defendant of the murder of Engram was not inconsistent with the verdict finding the defendant guilty of an assault with intent to murder Jones.

"A jury is authorized to believe a part of the defendant's statement, though the whole statement is not credible to them; and the same thing is true as to the testimony of each and every witness who appears before the jury." *Wilson* v. *State,* 9 *Ga. App.* 297 (2) (70 S. E. 1125). See also *Reaves* v. *Columbus Electric &c. Co.,* 32 *Ga. App.* 140, 151 (122 S. E. 824) ; *Sutton* v. *State,* 123 *Ga.* 125, 127 (51 S. E. 316) ; Code, § 38-415. In making up their verdict, "it is the prerogative of the jury to believe certain parts only of the defendant's statement and to combine those parts with certain parts only of the evidence." *Goldsmith* v. *State,* 54 *Ga. App.* 268, 271 (187 S. E. 694).

Applying these rules to the evidence appearing in the record in this case, the jury were authorized to find that the testimony of Milton Walker amounted in effect to the following: "I didn't pay any attention to them [Montgomery, Jones, and Engram] until I heard the first shot [in the encounter, which was fired by Montgomery], then I looked that way, and I saw the fire come from the pistol [of Montgomery] and I left. I didn't look back, but I heard some more shooting."

Howard Pharoah testified in effect that he was talking to Milton Walker on the occasion in question, and that he saw Carlton Jones approach Essie B. Montgomery and Leroy Engram. He stated: "When Carlton got there, Leroy was standing by the bicycles, and Essie B. was standing off to himself. Carlton walked up in front of Essie B., and Leroy was between Carlton and Essie B. . . I didn't see any weapon in his [Carlton Jones's] hand when he walked up on the church ground. He did not have a pistol in his hands; if he had I would have seen it. . . Carlton walked up, they went to shooting; I broke and run through the cornfield. Carlton did not have · a gun when Essie B. started shooting. I heard Essie B. fire one time. . . He [Jones] got out [of his car] and walked up on the church grounds, and I heard the pistol shot and I run. I didn't pay no attention until I saw the fire from the pistol. I didn't

see Essie B. get the pistol from his pocket, and I didn't see anybody hand it to him. I didn't notice the pistol until it fired. The sound made me look, and I broke and run. There was some more shooting, but I don't know how many shots."

Thus, the jury were authorized to find that this witness merely testified that he did not see either Essie B. Montgomery or Carlton Jones have a pistol but as Jones approached they went to shooting; that Montgomery got a pistol from somewhere, either his pocket or some other place, and fired the first shot; and that the witness ran and did not see anything else, and therefore did not know whether Jones had an unseen pistol in his pocket or had no pistol at all until the shooting began.

The jury could have believed that part of Carlton Jones's testimony in which Jones said that the defendant Montgomery committed a felonious attack upon him, opening fire upon him with a pistol and wounding him twice, without provocation; and they could have disbelieved that part of Jones's testimony in which Jones said that he did not himself fire at Montgomery at all on the occasion here in question, which occurred at the church, and that he did not even have his pistol with him but had left it in his car some distance away.

The jury could likewise have believed that part of the defendant's statement in regard to the encounter at the church, in which he said: "When I got there, Leroy [Engram, the deceased] was in front of the church sitting on his bicycle. When I walked up to where Leroy was . . I saw Carlton coming. He got out of his automobile and come straight towards me; and I got the pistol out of Leroy's pocket—Leroy was sitting on his bicycle. Carlton walked up there . . and he reached in his pocket and got his pistol out. . . His pistol snapped the first time and he started shooting right across to where I was. . . He emptied his pistol up there. When Leroy got shot, Leroy said, 'He [Jones] done shot me.' Carlton run around behind the church. Leroy walked off a piece and says, 'Yes, sir, he done shot me, right here,' and he put his arm on my shoulder. I asked somebody to carry him to the doctor."

Monroe Mason testified in part: "I didn't count the shots, but it must have been four or five shots fired, from the sound of the shooting. I was looking at the shooting. Essie B. [the

defendant] done the shooting; I didn't see Carlton [Jones] do any shooting. I didn't find any gun on Carlton. I found the gun in his car, and took it home because I didn't want Carlton to have any trouble with it. Mr. Alton Finley got the gun from me." He also said that when Engram was shot he then and there said that Montgomery shot him. On cross-examination, Mason testified in part as follows: "I don't know whether or not I told Mr. Joe Hammock that I got that pistol out of Carlton's hands. I was scared of him and I don't know what I told him. I hid the pistol to keep somebody else from shooting it. I didn't hide it to try to show that Carlton did not have a gun."

However, in view of the following testimony of J. T. Hammock, the jury could have disregarded the entire testimony of Mason: "I know Monroe Mason, who has been on the stand. On Monday, the day after the shooting on Sunday, I went to the field—Monroe Mason's field—where they were gathering peanuts. The statement he made to me corresponded with his statement on the stand, except as to where he got the pistol after the shooting. He told me he got the pistol out of Carlton Jones's hand and took it and put it in his pocket. He said he was the first one to go to him after he fell at the corner of the church."

There was testimony from which the jury could have found that the defendant fled from the place of the shooting; and also evidence from which they could have found that on the same day prior to the occurrence at the church the defendant and Jones had had a fight, which resulted in the defendant cutting Jones with a knife and in Jones shooting at the defendant.

In determining the criminality of the act of killing, or of an assault with intent to murder, with a bullet fired from a pistol, it is immaterial whether the intent was to kill the person killed, or the person assaulted with the intent to kill, or whether the death or intended killing of such person was accidental, or otherwise the unintentional result of the intent to kill someone else. The intent to kill is transferred; it follows the bullet. The purpose and nature with which the shot was fired is not changed in any degree by the circumstance that it did not take effect upon the person at whom it was aimed. The purpose and malice

remain, and, if the person struck was assaulted with the intent to kill or was killed, the crime is as complete as though the person at whom the shot was fired had been assaulted with the intent to kill or killed, the lives of all persons being equally sacred in the eyes of the law and equally protected by its provisions. The general rule is that, when one person is assaulted with the intent to kill, or is killed, by mistake or accident, the character of the offense is the same that it would have been if the person assaulted with the intent to kill, or killed, had been the intended victim. *Charlon* v. *State*, 106 *Ga.* 400 (3) (32 S. E. 347); *Hamilton* v. *State*, 129 *Ga.* 747 (2) (59 S. E. 803); *Strickland* v. *State*, 9 *Ga. App.* 552 (1) (71 S. E. 919).

In the brief of the defendant it is stated that, "on the trial . . the defendant took this position: that he, in self-defense, returned Jones's fire and wounded Jones, and that in the battle between defendant and Jones the bystander Engram was killed; on this appeal his contention is this: that as the jury acquitted him of the murder of Engram, a verdict finding him guilty of an assault with intent to murder Jones is inconsistent with the other verdict."

The jury, however, seems to have accepted the view of the evidence contended for by the State; and we think that the phase of the evidence which we have herein set out authorized them so to do.

This phase of the evidence and the defendant's statement authorized the jury to find that Essie B. Montgomery, the defendant, with a pistol fired upon and wounded Jones without justification or excuse and with the intent to kill him, and that Montgomery was guilty of an assault with intent to murder Jones in so doing; and to find that Jones in self-defense returned the fire of the defendant Montgomery, and in so defending himself he killed Engram, an innocent bystander. Therefore, if the jury found that Jones in defending himself under such circumstances killed the bystander, the defendant, Essie B. Montgomery, was not guilty of murder; and the verdict finding Montgomery guilty of an assault with intent to murder Jones was not inconsistent with the verdict acquitting him of the murder of Engram.

The evidence authorized the verdict, and the trial court did not err in overruling the motion for a new trial.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*