### 35145. HAND v. THE STATE.

DECIDED JULY 16, 1954.

*Garland & Alaimo*, for plaintiff in error.
*Roy Leathers, Solicitor-General*, contra.

. TOWNSEND, J. ■ Special "grounds 1 and 2 of the amended motion for a new trial complain that the trial court, in the absence of request, failed to charge the rule of law as to the impeachment of a witness by previous contradictory statements made by him as to matters relevant to his testimony and to the case, as provided by Code § 38-1803, and impeachment of a witness by disproving facts testified to· by him, as provided by Code § 38-1802. The court did charge on the subject of impeachment of witnesses by proof of conviction of a crime involving moral turpitude, and the court also gave in charge the rule of law that the jury constituted the exclusive judges of the credibility of witnesses, and had a right to consider their manner and deportment on the witness stand, their opportunity for knowing the facts about which they testified, the probability or improbability of their testimony, their interest in the case if any, and the reasonableness of such testimony.

The general rule is to the effect that it is not error for the trial court, in the absence of request, to charge on the subject of impeachment of witnesses. *Rouse* v. *State,* 2 *Ga. App.* 184 (7) (58 S. E. 416). It is also a general rule that, where the court undertakes to charge upon a subject, whether it is necessary for him to do so or not, he should charge, as to the rule of law in question, fully and accurately. The cases of *Ware* v̆. *State,* 81 *Ga. App.* 762 (59 S. E. 2d 753), *Harper* v. *State,* 17 *Ga. App.* 561 (1) (87 S. E. 808), and *Williams* v. *State,* 25 *Ga. App.* 193 (2) (102 S. E. 875) were all reversed because the trial court, after charging that a witness might be impeached by contradictory statements, failed to instruct as to the effect of successful contradiction upon the credit to be given the witness's testimony, as well as upon the effect of statements made wilfully and knowingly falsely. Obviously, the part of these instructions which was omitted was necessary to an understanding by the jury of the meaning of impeachment by contradictory statements, on which subject the court attempted to charge.

˙Here, the court charged that the jury were the exclusive judges of the credibility of witnesses. "The omission of the judge to instruct the jury as to the law of impeachment of witnesses by contradictory statements does not require the grant of a new trial, in the absence of an appropriate and timely written re-

quest for an instruction on the subject." *Slocumb* v. *State,* 157 *Ga.* 131 (1) (121 S. E. 116). In the absence of a request for a more specific charge, a general charge that the jury are the exclusive judges of the credibility of the witnesses is sufficient. *Central of Ga. Ry. Co.* v. *McGuire,* 10 *Ga. App.* 483 (3) (73 S. E. 702). Since the court did not undertake to charge specifically on the subject of impeachment of witnesses by contradictory statements or by disproving facts testified to by them, it is not subject to the criticism that the court, after undertaking to charge the subject, failed to do so clearly, accurately and with sufficient fullness. This ground is without merit.

■ Special grounds 3 and 4 of the amended motion for a new trial are abandoned. It is contended in special ground 5 that the trial court erred in giving in charge the law of conspiracy for the reason that there was no evidence tending to show that the defendant Carl Hand entered into any conspiracy or preconceived plan to commit a crime against any of the victims named in the indictment. The defendant, of course, admitted that he fired the shots which wounded the five victims, but the mere fact that he fired the shots would not serve to exclude evidence that, at the time they were fired, there was a joint concert of action between himself and his co-indictees. It was the contention of the State that there was such concert of action, and that the defendant fired because of a motion or signal made by his brother as the latter left the house and ducked behind an automobile, and evidence to this effect would of course go to show motive on the part of the defendant who actually fired the shots. In support of this contention, there was a considerable amount of evidence as to a quarrel between Ed Hand, the defendant's father and co-indictee, and the owners of the automobile parked in the Ousley yard over the fact that the latter took the defendant's sister to a dance, and that the defendant took part in this altercation. There was testimony that on that same morning Ed Hand had stated in the defendant's presence, and referring to the occupants of the automobile, that there would be bloodshed before the sun went down. There was evidence from which the jury would have been authorized to find that the defendant, his father and his brother went to the Ousley house for the purpose of finding these people in order to commit further

violence upon them. All that is necessary to admit a charge on the subject of conspiracy is to show a joint concert of action for the purpose of doing an unlawful act, which fact may be made to appear by circumstantial as well as by direct evidence, and where there is some evidence to this effect a charge on the subject is proper. See *Patterson* v. *State,* 199 *Ga.* 773 (7) (35 S. E. 2d 504); *Anthony* v. *State,* ante, and cases there cited. This ground is without merit.

■ As to the general grounds, it is contended by counsel for the plaintiff in error that the verdict finding the defendant guilty on one count of the indictment and not guilty on the other four counts was repugnant and inconsistent under the facts of the case and therefore contrary to law. If it is true that, as contended, the defendant must either be innocent of the crime charged against him *as to all of the victims wounded by his shots* on the ground that he was justified in shooting in defense of his brother, or that he is guilty of the same offense as to each of the persons injured, then the verdict would be repugnant and therefore void. *Kuck* v. *State,* 149 *Ga.* 191 (99 S. E. 622); *Smith* v. *State,* 38 *Ga. App.* 366 (143 S. E. 925); *Davis* v. *State,* 43 *Ga. App.* 122 (157 S. E. 888); *Evans* v. *State,* 46 *Ga. App.* 39 (166 S. E. 449). The evidence here would have authorized the jury to find either one of three conditions to exist: first, that the defendant committed an assault with intent to murder each of the persons whom he hit and had a separate intent as to each; second, that the defendant fired into a crowd of people in and around the house with that reckless disregard of life and safety which would create a presumption of malice and specific intent as to each person whom he hit; or third, that the defendant was committing an assault with the intent to murder Olin Ousley, that he shot at Ousley and in so doing also hit the four other persons. Under this latter view of the case, the defendant would have had but a single intent.

One who, in an altercation with two separate persons, shoots and wounds both of them, is guilty of two offenses of assault with intent to murder if it is his intention to kill both victims, and this is true although substantially the same evidence is necessary to convict in both instances. *Crocker* v. *State,* 47 *Ga.* 568. In *Fews* v. *State,* 1 *Ga. App.* 122 (2) (58 S. E. 64), it is

stated as follows: "The defendant shot two separate and distinct men; the assault upon each of them was separate; they had made no joint attack upon him; *the intent to kill was directed against them individually;* the fact that the interval between the two shootings was slight does not make the transactions identical; therefore there was no lawful reason why he should not be tried and convicted in both cases." (Italics added.)

Under the ruling in *Webb* v. *State,* 68 *Ga. App.* 466 (23 S. E. 2d 578), and *Tift* v. *State,* 17 *Ga. App.* 663 (88 S. E. 41) the jury might have found that the defendant fired into the crowd of people in and around the house with that reckless disregard of human life and safety which would create a presumption of malice or specific intent, and under such a state of facts might have found the defendant guity as to each count, and each count would constitute a separate offense.

The jury, however, by acquitting the defendant as to four counts of the indictment found affirmatively that as to the victims named therein he had no intent to kill. By their conviction under count 4 charging assault with intent to murder Olin Ousley they found that he did have an intent to kill Ousley. From this, counsel for the defendant argues that since the rule is that if the defendant intends to kill A, but, by accident, miscalculation, mistake of identity or other reason he kills B instead, his act is measured by the same standard as if he had in fact killed A (*Wright* v. *State,* 199 *Ga.* 576 (2a), 34 S. E. 2d 879; *Hamilton* v. *State,* 129 *Ga.* 747 (2), 59 S. E. 803; *Godbee* v. *State,* 141 *Ga.* 515, 81 S. E. 876; *Strickland* v. *State,* 9 *Ga. App.* 552 (1), 71 S. E. 919), it follows that either the defendant, who hit the other victims while intending to kill Ousley, is equally guilty as to all five counts, or else that he would not be guilty as to any of them, and that this creates the repugnancy which voids the verdict. This reasoning is unsound because, however many people were hit by the shots fired by the defendant, if it was one transaction there could be but one conviction. It was one transaction if there was but one intent. In *Scott* v. *State,* 157 *Ga.* 124, 130 (120 S. E. 773) the following charge to the jury was approved: "Where one man shoots at another and kills a third party accidentally . . . then he is guilty of *the same offense* as though he shot and killed the person at whom he shot or in-

458

tended to shoot." (Italics ours.) In *Burnam* v. *State*, 2 *Ga. App.* 395 (58 S. E. 683) it is held as follows: "The same-transaction test adopted in this State may make a trial for the murder of one person a bar to a prosecution for assault with intent to murder a different person. For instance, if the defendant shot at A, intending to kill him, and by reason of bad marksmanship struck and killed B, whom he did not intend to kill, the transactions, the assault with intent to murder A, and the actual murder of B, are legally the same. As intimated by this court in the *Few's* case, if by separate shots the defendant wounded two persons, the transaction would be single if the shooting was done in repelling a joint assault of these two persons. *The intent of the defendant determines* the matter." (Italics added). As stated in *Montgomery* v. *State*, 78 *Ga. App.* 258, 262 (50 S. E. 2d 777): "The intent to kill is transferred; it follows the bullet." Where there is but one intent there is but one transaction and one offense; where there is an intent to kill or injure two or more, there are separate transactions and separate offenses. The evidence and all the inferences raised thereby must be construed in a light most favorable to the verdict. Thus construed, the jury was authorized to find that the defendant shot each victim while intending to shoot Olin Ousley. Based on this intent the verdict was "guilty" as to him. The verdict was "not guilty" as to the others because as to them the intent essential to conviction had been used up on the Olin Ousley count and was exhausted. Since the jury was authorized to find this to be a single transaction with a single intent, the verdict of guilty on the fourth count of the indictment was authorized. This being established by a jury verdict on authorized evidence, a verdict of not guilty as to the remaining counts was demanded. Such a verdict is not void for repugnancy.

If, on the other hand, the jury actually found that the defendant with one of his shots intended to murder Olin Ousley and then, on consideration of the remaining counts, should find the absence of such an intent as to the victims set out in the other counts, but at the same time found that the shooting of those set out in the remaining counts was a separate transaction from the one set out in the Olin Ousley count, such verdict was authorized by the evidence and would not be repugnant. If such were

found, however, there must be a separate intent as to the other victims than the intent as to Olin Ousley. Although, as hereinbefore pointed out, the jury would have been authorized to find that the defendant fired into the crowd of people with that reckless disregard for human life and safety which would create a presumption of malice and specific intent as to each person hit, the verdict shows that this was not its finding.

The verdict was authorized by the evidence and the court did not err in denying the motion for a new trial as amended.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*