## 45575. WILLIAMS v. THE STATE.

WHITMAN, Judge. The defendant-appellant, Grover Williams, Jr., was indicted and tried on two counts simultaneously. Count one was for aggravated assault upon one Daniel Gibson by shooting him with a pistol with intent to kill. Count two was for aggravated assault upon one William Bridges by shooting him with a pistol with intent to kill. The jury found Williams "guilty" on count one and "not guilty" on count two.

The appeal is from the denial of defendant's motion for new trial. The enumeration of errors is as follows:

"(1) The court erred in overruling and denying appellant's motion, as amended, for a new trial. (2) The court erred as a matter of law in not vacating and setting aside the verdict of the jury on count one (1) of the indictment and entering a judgment of acquittal on said count on the ground that the verdict on count one (1) is inconsistent with and repugnant to the verdict on count two (2). (3) The court erred as a matter of law in not vacating and setting aside the verdict of the jury on count one (1) of the indictment and entering a judgment of acquittal on said count on the ground that the verdict on count one (1) is violative of appellant's constitutional right to due process of law."

The transcript of evidence and proceeding reflects the following: Several people were in the back yard of a "double tenant" house on Royal Street in College Park, including Daniel Gibson and William Bridges. It was "first dark" and they were laughing and talking when Williams came around. Gibson testified that some words were said between him and Williams; that Williams "went in his pocket and popped a knife open and drawed it back like that—." Gibson further testified that he was within Williams' "stabbing range"; that he (Gibson) had a pistol in his pocket and pulled it out where Williams could see it; and that Williams put away the knife and left. Gibson then testified that a short while later, about thirty minutes, he saw Williams again. He further testified: "Q. And on the second occasion when you saw him, what were you doing? A. Getting up off the floor after he shot me. Q. Well, prior to having been

shot, just immediately prior to being shot, what were you doing? A. I was fixing to go in the door. Q. And did you go in the door? A. I had my left hand on the screen door. Q. Did you ever enter that door? A. No, sir. Q. Did you change your direction, did you turn around or what happened right at that point? A. When he say, 'you black son of a bitch,' that's when I turned around, that's when I got shot. Q. From the time you turned around how long was it before you got shot? A. The time I turned around, I got shot. Q. Show us where you were shot at? A. Right through there—Q. Show us where the bullet, if the bullet left your body, show us where it left your body. A. Right over there— Q. At the time that you were shot did you have your pistol? A. It was sticking out right there. Q. At any time did you take it out of your belt? A. No, sir. Q. Did you ever fire this weapon? A. No, sir."

The testimony further shows that the bullet went through Gibson's face, knocking out two or three teeth; that it knocked him down on the floor of the porch. Gibson testified that he never lost consciousness. He testified that Williams had a pistol and he saw fire jumping out of the barrel when he turned around and got shot. Gibson also testified that more than one shot was fired.

William Bridges testified that he saw Gibson come in the yard and then leave and then come back about 15 or 20 minutes later; that he (Bridges) was sitting all the while on the porch on a stool besides a chair. He testified as follows: "Q. What happened the second time you saw Glover Williams? . . . A. Well, the second time I saw Glover Williams I just saw fire coming out of a gun. I didn't see him when he come back to this place the second time. Q. What was happening when you saw him? A. It was shooting going on when I saw him. Q. Was Glover Williams shooting? A. Yes, sir, he was shooting. Q. And where was he in relation to where you were? A. He was out in the yard and I was on the porch. Q. Did you get shot that day? A. Yes, sir. Q. Where? A. In the shoulder. Q. Do you know who shot you? A. I could't say for definite who shot us because I don't know who done the shooting. Both of them had guns now and whether both of them shot or not I can't say. I don't

know who fired first or whether both of them shot them guns or not, I don't know. But I do know he shot a gun . . . Q. Now did you see anyone else firing a weapon at that time other than the defendant? A. No, sir, I didn't see anyone else fire a weapon. Q. Do you know how many shots were fired? A. No, sir, I don't. Q. Do you know whether it was one or more than one? A. I know it was more than one but I don't know how many. Q. Now at the time that you were shot, do you know where Daniel Gibson was? A. I guess he was on the porch there because when I realized I was shot—It was a good while before I realized I was shot, I didn't realize I was shot at first. Q. Did you see Daniel Gibson on the porch? A. Yes, sir, I saw him on the porch. . . What was Daniel Gibson doing when you saw him? . . . A. They had a pistol, they took some bullets out, they was putting the bullets back in. Q. And then what did he do? A. He didn't do anything that I know of, I didn't see him doing anything. Q. Do you know where he was when you got shot? A. Actually I didn't see anyone get shot. I jumped up, I was so excited when I first saw the shot come out of the gun, I closed my eyes, I didn't even move until all the shooting was over with. Q. Now I believe you said something about seeing the fire coming from a gun? A. Yes. Q. Where did you see this in relation to where you saw Glover Williams, Jr.? A. The fire was coming from Glover Williams' gun, the fire that I saw. . . . Q. You don't know whether you saw the fire from the gun that came from the direction where Glover Williams was standing, you don't know that was the first shot fired or not do you? A. No, sir, I don't know whether it was the first shot fired or not. Q. And you don't know whether you were shot by Daniel Gibson or by this defendant, do you? A. No, sir. Q. Daniel Gibson had a gun, didn't he? A. Yes, sir. Q. And there were many shots fired, wasn't there? A. Yes, sir. . . Q. Do you know whether you were hit by the fire from the gun in the hands of this defendant or hit from the fire of a gun in the hands of the others? A. I run about a block before I realized I was shot."

Bridges also testified that he heard Daniel Gibson curse Glover Williams that night.

Another witness, Nathaniel Carter, testified he saw defendant

Williams at Williams' house about first dark of the day in question and heard Williams say "I'm tired of that man f——g with me", and that he saw Williams get his pistol and that he followed Williams back over to the house in question and heard him say "I am back, I am back." Carter further testified "And he shot and I ran, that's all I know." *Held:*

1. With regard to the first enumeration of error, the appellant has limited argument in his brief to the general grounds of his motion for new trial, contending therein that the facts shown from the transcript of evidence are not sufficient to establish a suspicion of guilt of the appellant; that unexplained and suspicious circumstances are not sufficient to convict a person of a felony; and the verdict of the jury was contrary to and against the weight of the evidence. The only question, therefore, is whether there is any evidence of every element necessary to convict for the offense charged. Our review of the evidence shows that the jury's verdict of "guilty" on count one is amply supported. The trial court did not err in overruling the motion for new trial so far as its general grounds are concerned.

2. The second and third enumerations (see above) are considered together. It is argued that since both counts grew out of the same transaction and the same evidence was relied upon by the State to support each count, the acquittal on one count and conviction on the other is inconsistent and the conviction is void for repugnancy. In *Kuck v. State,* 149 Ga. 191 (99 SE 622), cited by appellant, where the defendant was charged in one count of selling spirituous liquors, etc., and in another count that he did on the same day possess spirituous liquors, etc., and the same evidence was relied on to convict under both counts, it was held that a verdict finding him guilty of selling and not guilty of possessing was void for repugnancy. The same result was reached in *Davis v. State,* 43 Ga. App. 122 (157 SE 888), also cited by appellant, where the defendant was found guilty of transporting liquor but not guilty of possessing it. In these cases the defendants had to be guilty of "possessing" or guilty of neither. The same is not true in the case sub judice. In making up their verdict it is the prerogative of the jury to believe all or part or none of the testimony of the witnesses. They may

combine the testimony of some with the testimony of others in arriving at what they find to be the truth of the matter. It was not imperative in this case to find that the appellant committed the offense of aggravated assault on both or neither. It is true that it is no less of an offense to accidentally hit an innocent by-stander where there was intention to shoot another. And while there is direct evidence in the case that Williams did intend to and did shoot Gibson, there is evidence that Gibson had also had a pistol; that he was not incapable of shooting it; and that there were several shots fired. This evidence, together with Bridges' own testimony that he did not know who shot him and that he did not know he had been shot until he was a block away was sufficient to support the verdict on both counts. The two verdicts are not repugnant. See *Montgomery v. State,* 78 Ga. App. 258 (50 SE2d 777); *Hand v. State,* 90 Ga. App. 452 (3) (83 SE2d 276).

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*
ARGUED SEPTEMBER 8, 1970—DECIDED SEPTEMBER 22, 1970.

*Garland & Garland, Reuben A. Garland, Edward T. M. Garland,* for appellant.

*Lewis R. Slaton, District Attorney, Tony H. Hight, Robert L. Ridley,* for appellee.