A01A2521. STURM, RUGER & COMPANY, INC. et al. v. CITY OF ATLANTA.
(560 SE2d 525)

ANDREWS, Presiding Judge.

This case is before us on appeal from the trial court's denial of appellants' motion to dismiss in full the City of Atlanta's (City's) suit against 17 defendants that manufacture, distribute, sell, and promote the use of firearms. Because the State has preempted the field of gun regulation and also because this suit is barred by OCGA § 16-11-184, the trial court erred in not granting appellants' motion to dismiss all claims.

*Procedural History*

On February 4, 1999, the City filed a complaint alleging that it had suffered harm and incurred significant expenses because the

---

defendants, fourteen gun manufacturers and three trade associations (gun manufacturers), had manufactured, distributed, marketed, promoted, and sold firearms which were defective, unreasonably dangerous, and negligently designed. The complaint alleged, for example, that the firearms were unreasonably dangerous because they could be fired by unauthorized users, including children, criminals, and mentally unstable persons, because they were not distributed with adequate warnings as to the risks or instructions for proper storage, and because they failed to adequately warn all foreseeable users, including unintended users, that an undetectable round of ammunition could be housed in the firing chamber, thus allowing the gun to be fired even when the magazine had been removed.

The City alleged three counts against the manufacturers: defective and negligent design, failure to include safety devices, and failure to warn. The complaint also alleged negligence against the trade associations for failing to discourage unauthorized use, failing to develop and implement safety features, and failing to issue adequate warnings. The City claimed it was damaged because it had been forced to pay out large sums of money to provide police and emergency services, police pension benefits and related expenditures, as well as losing substantial tax revenues because of lost productivity. Neither the complaint nor the subsequently filed amended complaint contained any references to a specific victim of defects in a specific firearm, a specific type of safety device which should have been installed, or a specific instance of an inadequate failure to warn.

Five days after the complaint was filed, the General Assembly passed House Bill 189, amending OCGA § 16-11-184. The original version of OCGA § 16-11-184, in existence at the time the City filed its complaint, provided:

(a) It is declared by the General Assembly that the regulation of firearms is properly an issue of general, state-wide concern. (b) No county or municipal corporation, by zoning or by ordinance, resolution, or other enactment, shall regulate in any manner gun shows, the possession, ownership, transport, carrying, transfer, sale, pur- chase, licensing, or registration of firearms, components of firearms, firearms dealers, or dealers in firearms components. (c) A county or municipal corporation may regulate the transport, carrying, or possession of firearms by employees of the local unit of government in the course of their employment with that local unit of government. (d) Nothing contained in this Code section shall prohibit municipalities or counties, by ordinance, resolution, or other enactment, from requiring the

ownership of guns by heads of households within the political subdivision. (e) Nothing contained in this Code section shall prohibit municipalities or counties, by ordinance, resolution, or other enactment, from reasonably limiting or prohibiting the discharge of firearms within the boundaries of the municipal corporation.

Code 1981, § 16-11-184, enacted by Ga. L. 1995, p. 139, § 2.
This Code section was amended as follows:

16-11-184. **Regulatory authority of political subdivisions; limitations.** (a) (1) It is declared by the General Assembly that the regulation of firearms is properly an issue of general, state-wide concern. (2) The General Assembly further declares that the lawful design, marketing, manufacture, or sale of firearms or ammunition to the public is not unreasonably dangerous activity and does not constitute a nuisance per se. (b) (1) No county or municipal corporation, by zoning or by ordinance, resolution, or other enactment, shall regulate in any manner gun shows, the possession, ownership, transport, carrying, transfer, sale, purchase, licensing, or registration of firearms, components of firearms, firearms dealers, or dealers in firearms components. (2) The authority to bring suit and right to recover against any firearms or ammunition manufacturer, trade association, or dealer by or on behalf of any governmental unit created by or pursuant to an Act of the General Assembly or the Constitution, or any department, agency, or authority thereof, for damages, abatement, or injunctive relief resulting from or relating to the lawful design, manufacture, marketing, or sale of firearms or ammunition to the public shall be reserved exclusively to the state. This paragraph shall not prohibit a political subdivision or local government authority from bringing an action against a firearms or ammunition manufacturer or dealer for breach of contract or warranty as to firearms or ammunition purchased by the political subdivision or local government authority.

Ga. L. 1999, pp. 2-3, §1.
Section 2 of the Act, not codified by the General Assembly, provides that "The General Assembly intends that paragraph (2) of subsection (a) of Code Section 16-11-184 as enacted by this Act shall embrace the rule of law in Division 1 of *Rhodes v. R. G. Industries, Inc.*, 173 Ga. App. 51 [(325 SE2d 465)] (1984)." Ga. L. 1999, p. 3, § 2.

Section 3, also not codified by the General Assembly, provides that "This Act shall apply to any action pending on or brought on or after the date this Act becomes effective." Ga. L. 1999, p. 3, § 3.

After the gun manufacturers moved to dismiss, claiming the suit was barred under both the original and amended OCGA § 16-11-184, the City filed its first amended complaint, adding claims of nuisance, fraud, fraudulent concealment, unjust enrichment, negligent marketing and distribution, and civil conspiracy. Five days later, the gun manufacturers filed a renewal and restatement of their motion to dismiss to include the amended complaint. The City responded, claiming that amended Code section 16-11-184 could not be applied retroactively so as to bar its suit.

The court held a hearing on the motion to dismiss at which the gun manufacturers argued that both the complaint and amended complaint should be dismissed for the reasons previously stated. The court granted the motion to dismiss the claims of strict liability, but refused to dismiss the claims of negligence. Although the arguments at the hearing, the restated motion to dismiss, the reply brief filed by the gun manufacturers, as well as the proposed order submitted by the gun manufacturers, all clearly stated that the arguments applied to all claims in both the complaint and the amended complaint, the trial court nevertheless refused to consider dismissing the claims in the City's amended complaint, stating that these claims were "not addressed in Movants' Motions to Dismiss."

The court also refused to consider Count 4 of the complaint, the claim of negligence against the trade associations, stating that the claim was inapplicable to movants (Smith & Wesson and Beretta) and directed only to the trade association defendants. The trial court held this despite having heard and acknowledged the statement made by counsel for the trade associations at the hearing that the trade associations adopted the position of the gun manufacturers in its entirety and had nothing to add.

The gun manufacturers requested a certificate of immediate review under OCGA § 5-6-34 (b); but, the trial court refused to certify that the partial denial of the motion to dismiss was of such importance to the case that immediate review should be had by this Court. The gun manufacturers then filed a declaratory judgment action, request for injunction, and petitions for writs of mandamus and prohibition against the trial court judge in the Superior Court of Fulton County. The Fulton County Superior Court denied all claims for relief, and the issues were appealed to the Supreme Court of Georgia.

The Supreme Court affirmed the superior court, holding that these were issues which must be determined through the statutory appeal process. *Smith & Wesson Corp. v. City of Atlanta*, 273 Ga. 431,

432 (543 SE2d 16) (2001).[1] Shortly after the Supreme Court issued this opinion, the legislature amended OCGA § 5-6-34 (a) to permit a direct appeal of "[a]ny ruling on a motion which would be dispositive if granted with respect to a defense that the action is barred by Code Section 16-11-184." OCGA § 5-6-34 (a) (5.1). This appeal followed.

"A trial court should grant a motion to dismiss only when, assuming the allegations in the complaint are true, the plaintiff would not be entitled to any relief under the facts as stated and the defendant demonstrates that the plaintiff could not introduce evidence that would justify granting the relief sought. Our review is de novo." (Footnotes omitted.) *Moore v. BellSouth Mobility*, 243 Ga. App. 674, 675 (534 SE2d 133) (2000).

Here, the gun manufacturers argued below and on appeal that Georgia law, under both the original OCGA § 16-11-184 and amended OCGA § 16-11-184, does not permit this suit. The State of Georgia, in an amicus brief, contends that state law preempts the City's suit. The City's response on appeal is that OCGA § 16-11-184, as amended, cannot be applied retroactively to bar this suit.

## State Preemption

The State's amicus brief argues that this suit is barred because the State has preempted the field of gun regulation. The State contends that under Georgia's Constitution and laws, it alone has the power to regulate the manufacture, sale, distribution, and promotion of firearms and this lawsuit is an attempt by the City to usurp the governmental power and authority of Georgia's General Assembly. We agree.

> The doctrine of state preemption is based on the concept that statutes of the state legislature control over county [or city] ordinances. Generally preemption is based on legislative intent. Under federal law, for example, Congress may express an intent to preempt state law by expressly defining the area of preemption, extensively regulating an area so that preemption may be inferred, or enacting a law that

---

[1] Two of the justices "reluctantly concur[red]" in the holding that the defendants were not entitled to the relief sought in these collateral actions; but, the justices wrote to make clear that this determination did not reach the ultimate issue of whether state law precluded the suit and they believed it did. *Smith & Wesson Corp.*, supra at 435 (Fletcher, P. J., concurring). The concurring opinion also stated that, considering the unambiguous language in OCGA § 16-11-184, which gives the General Assembly the sole power to regulate the right of the people to keep and bear arms, they disagreed with the trial court's refusal to certify the order for immediate review. Id. at 435-436.

directly conflicts with state law. Similarly, state law may preempt local law expressly, by implication, or by conflict.

(Footnotes omitted.) *Franklin County v. Fieldale Farms Corp.*, 270 Ga. 272, 273-274 (1) (507 SE2d 460) (1998).

Art. I, Sec. I, Par. VIII of the Georgia Constitution of 1983 provides: "The right of the people to keep and bear arms shall not be infringed, but the General Assembly shall have power to prescribe the manner in which arms may be borne." The General Assembly has exercised this power given by the constitution to create a regulatory scheme for the distribution and use of firearms. *Rhodes v. R. G. Indus.*, supra at 52.

In this case, preemption can be inferred from the comprehensive nature of the statutes regulating firearms in Georgia, among which are the Georgia Firearms and Weapons Act, codified at OCGA § 16-11-125, and OCGA §§ 16-11-126 through 16-11-134, the Brady Handgun Violence Protection Act, codified at OCGA §§ 16-11-170 through 16-11-184, and also OCGA §§ 43-16-1 through 43-16-12 which regulate the licensing of firearms dealers.

More importantly, the State has also expressly preempted the field of firearms regulation in OCGA § 16-11-184, which, even before its amendment in 1999, provided "that the regulation of firearms is properly an issue of general, state-wide concern." And,

> (b) (1) No county or municipal corporation, by zoning or by ordinance, resolution, or other enactment, shall regulate in any manner gun shows, the possession, ownership, transport, carrying, transfer, sale, purchase, licensing, or registration of firearms, components of firearms, firearms dealers, or dealers in firearms components.

The practical effect of the preemption doctrine is to preclude all other local or special laws on the same subject. Ga. Const. of 1983, Art. III, Sec. VI, Par. IV (a);[2] *Franklin County*, supra at 275 (2). That the City has filed a lawsuit rather than passing an ordinance does not make this any less a usurpation of State power. The City may not do indirectly that which it cannot do directly. As the State points out, power may be exercised as much by a jury's application of law in a civil suit as by statute. "The test is not the form in which state power has been applied but, whatever the form, whether such power has in

---

[2] Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general law, except that the General Assembly may by general law authorize local governments by local ordinance or resolution to exercise police powers which do not conflict with general laws.

fact been exercised." (Punctuation omitted.) *BMW of North America v. Gore*, 517 U. S. 559, 572 (II), n. 17 (116 SC 1589, 134 LE2d 809) (1996). "The obligation to pay compensation can be . . . a potent method of governing conduct and controlling policy." *San Diego Bldg. Trades Council v. Garmon*, 359 U. S. 236, 247 (79 SC 773, 3 LE2d 775) (1959).

Through this lawsuit, the City seeks to punish conduct which the State, through its regulatory and statutory scheme, expressly allows and licenses. Because the State has reserved to itself the right to prescribe the manner in which firearms may be regulated, the City may not attempt to usurp that power, whether by litigation or regulation, and the trial court erred in not dismissing the City's complaint and amended complaint against all defendants.

### *Amended OCGA § 16-11-184*

The State and the gun manufacturers argue that the City's claims are also prohibited under amended Code section 16-11-184. We agree.

As previously noted, this Code section was amended in 1999 to add the following subsections:

> (a) (2) The General Assembly further declares that the lawful design, marketing, manufacture, or sale of firearms or ammunition to the public is not unreasonably dangerous activity and does not constitute a nuisance per se.
>
> (b) (2) The authority to bring suit and right to recover against any firearms or ammunition manufacturer, trade association, or dealer by or on behalf of any governmental unit created by or pursuant to an Act of the General Assembly or the Constitution, or any department, agency, or authority thereof, for damages, abatement, or injunctive relief resulting from or relating to the lawful design, manufacture, marketing, or sale of firearms or ammunition to the public shall be reserved exclusively to the state. This paragraph shall not prohibit a political subdivision or local government authority from bringing an action against a firearms or ammunition manufacturer or dealer for breach of contract or warranty as to firearms or ammunition purchased by the political subdivision or local government authority.

In addition, Ga. L. 1999, p. 3, § 3, not codified by the legislature, provides that the 1999 amendment is applicable to any actions pending

on or brought on or after February 9, 1999.[3]

The City argues that in spite of the clearly expressed legislative intent, this Court may not apply the statute to bar the suit because it would deprive the City of constitutional and vested rights. We agree that the retroactive or retrospective application of a statute is unconstitutional if it affects the vested rights of citizens, *State Hwy. Dept. &c. v. Bass*, 197 Ga. 356, 362 (1) (29 SE2d 161) (1944), but we find no authority to support the City's contention that it has a vested right to pursue this lawsuit. In *Bass*, the Supreme Court of Georgia held that it had "definitely settled the law to be that our constitution forbids the passage of only those retroactive, or rather retrospective, laws which injuriously affect the vested rights of *citizens*." (Punctuation omitted; emphasis in original.) Id.

Municipal corporations are not citizens. "Municipal corporations are creations of the law. The legislature may modify or limit the corporate power or amend the charter, or withdraw it altogether, provided only that in doing so it does not conflict with any constitutional provision." (Punctuation omitted.) *Pierce v. Powell*, 188 Ga. 481, 484 (3) (4 SE2d 192) (1939). As creations of the State, powers of home rule cities may be constitutionally and retrospectively limited by the General Assembly. OCGA § 36-35-3; *City of Trenton v. New Jersey*, 262 U. S. 182 (43 SC 534, 67 LE 937) (1923). See also OCGA § 36-35-6 (a): "The power granted to municipal corporations . . . shall not be construed to extend to the following matters or to any other matters which the General Assembly by general law has preempted or may hereafter preempt. . . ."

*DeKalb County v. State of Ga.*, 270 Ga. 776 (512 SE2d 284) (1999), cited by the City is not persuasive on this issue. In that case, the County appealed claiming that the retrospective application of OCGA § 48-8-67 was unconstitutional. The Supreme Court rejected this argument, but did find that once the County met statutory requirements and implemented the HOST tax, it had a substantive right to those tax proceeds. Id. at 778. The holding was that the statute was procedural in nature and did not impair substantive rights. Id. at 779. The question of whether a county has the same vested rights as a citizen when applying a statute retroactively was not before the court, nor was it discussed. Moreover, unlike *DeKalb County*, the City's suit in this case "is, in reality, an application of

---

[3] This language appears in the enrolled original version of this Code section in the office of the Secretary of State. "Whenever there is a discrepancy between an act of the legislature as it appears in the printed acts of that body and as it appears in the enrolled act on file in the office of the Secretary of State, the enrolled act signed by the officers of the legislature and approved by the Governor controls." *Hooper v. Harvey*, 62 Ga. App. 224, 226 (8 SE2d 456) (1940). Accord *Bass v. Doughty*, 5 Ga. App. 458, 459 (63 SE 516) (1909).

power which has been primarily entrusted to the state, and which the state may reclaim at its discretion." *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 FSupp.2d 882, 892 (I) (C) (2) (a) (E.D. Pa. 2000).

The City argues that the statute only precludes suit for the "lawful" manufacture of firearms and therefore permits the City's suit because it alleges unlawful conduct. But, the legislature made only one exception to the prohibition in OCGA § 16-11-184 (b) (2) and that was for breach of contract and warranty actions. The legislature made no exclusion for suits alleging "unlawful" conduct.

It is a well-established canon of statutory construction that the inclusion of one implies the exclusion of others. *Ga. Ports Auth. v. Harris*, 243 Ga. App. 508, 518 (533 SE2d 404) (2000) (Andrews, P. J., dissenting). By expressly authorizing local governments to bring actions against firearms manufacturers and dealers for breach of contract or warranty as to firearms purchased by the local government, the legislature impliedly preempted all other causes of action. See *City of Atlanta v. S.W.A.N. Consulting &c.*, 274 Ga. 277, 279 (553 SE2d 594) (2001). In any event, the City has not pointed to any instance of unlawful conduct by either the gun manufacturers or the trade associations.

The City also argues that Section 3 cannot be applied retroactively because the only case pending at the time was that of the City and this would make it a local or special law in violation of Art. III, Sec. VI, Par. IV (a) of the Georgia Constitution. But, whether there is only one case pending at the time is not the test. The test is whether the law operates uniformly throughout the State upon the entire class of subjects with which it deals. *C & S Nat. Bank v. Mann*, 234 Ga. 884 (218 SE2d 593) (1975); *City of Calhoun v. North Ga. Elec. Membership Corp.*, 233 Ga. 759 (213 SE2d 596) (1975). There is no claim that the statute in question does not operate uniformly on all governmental units that come within the scope of its provisions.

Finally, the City argues that retroactive application of the statute would result in legislative usurpation of the judiciary. It contends that because the case was already pending, the General Assembly's reference to the *Rhodes* case in the statute violates the separation of powers. The City points to no authority in support of this argument and we find none. In any event, the provision referred to merely provides that "[t]he General Assembly intends that paragraph (2) of subsection (a) of Code Section 16-11-184 as enacted by this Act shall embrace the rule of law in Division 1 of *Rhodes v. R. G. Industries, Inc.*, [supra]," and we do not see any impermissible directive to the courts in this provision.

We note that courts in other states faced with similar suits and similar statutes have made these same determinations. See, e.g., *City*

*of Philadelphia v. Beretta,* supra at 890 (statute as amended clearly prohibits home rule municipalities from suing gun manufacturers for the production and distribution of firearms), aff'd, 277 F3d 415 (3rd Cir. 2002) (public nuisance claim dismissed because defendants lacked the requisite control over the interference with a public right and negligence claims dismissed because they were too remote); *Morial v. Smith & Wesson Corp.,* 785 S2d 1 (La. 2001) (City's lawsuit constituted an indirect attempt to regulate the lawful manufacture of firearms and statute prohibiting this type of suit could properly be applied retroactively to bar City's suit).

In addition, although some suits have survived a motion to dismiss,[4] courts in other states have dismissed similar suits without relying on a statutory prohibition. See, e.g., *Camden County Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.,* 123 FSupp.2d 245 (D. N.J. 2000) (dismissed for lack of standing and failure to show proximate cause), aff'd, 273 F3d 536 (3rd Cir. 2001) (only argued public nuisance claim on appeal and court held that no New Jersey court had ever allowed a public nuisance claim to proceed against a lawful manufacturer of a lawful product); *Ganim v. Smith & Wesson Corp.,* 258 Conn. 313 (780 A2d 98) (2001) (City did not have standing because it could not make a colorable claim of direct injury); *Penelas v. Arms Technology,* 778 S2d 1042 (Fla. App. 2001) (dismissed on many grounds, among which were standing, preemption, and costs of. providing municipal services were not recoverable); *Cincinnati v. Beretta U.S.A. Corp.,* 91 Ohio St.3d 1411 (740 NE2d 1111) (2001) (City made only broad assertions without alleging a direct injury caused by a specific model from a specific manufacturer and nuisance claim failed because an activity that is authorized by law cannot be a public nuisance or an absolute nuisance); *City of Chicago v. Beretta U.S.A. Corp.,* No. 98 CH 15596 (Ill. Cir. Ct. September 15, 2000) (order granting motion to dismiss).

Accordingly, for the reasons stated above, the City's complaint and amended complaint should have been dismissed in their entirety. No claims survive because of the legislature's clear directive that municipalities may not attempt to regulate the gun industry in any way except in the limited manner prescribed in OCGA § 16-11-184 (b) (2), (c), (d), and (e).

*Judgment reversed. Eldridge and Miller, JJ., concur.*

---

[4] See *White v. Smith & Wesson,* 97 FSupp.2d 816 (N.D. Ohio 2000) (motion to dismiss denied); *Boston v. Smith & Wesson Corp.,* Case No. 1999-02590, 2000 Mass. Super. LEXIS 352 (July 13, 2000) (motion to dismiss granted on claims of negligent distribution and marketing and denied on all other claims); *Sills v. Smith & Wesson Corp.,* Case No. 99C-09-283-FSS, 2000 Del. Super. LEXIS 444 (January 12, 2001) (motion to dismiss granted as to negligent marketing and distribution and unjust enrichment claims – denied as to all other claims).

DECIDED FEBRUARY 13, 2002.

*King & Spalding, William R. Bassett, Jr., Jenifer N. Stephens, Richard A. Schneider, Rogers & Hardin, Tony G. Powers, Cofer, Beauchamp & Butler, Frank R. Seigel, Smith, Gambrell & Russell, David M. Brown, Jones, Day, Reavis & Pogue, David J. Bailey, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, Timothy A. Bumann, Dennis, Corry, Porter & Gray, R. Clay Porter, Alisa W. Terry, Drew, Eckl & Farnham, James M. Poe*, for appellants.

*Moraitakis, Kushel & Pearson, Nicholas C. Moraitakis, Cochran, Cherry, Givens, Smith & Sistrunk, Hezekiah Sistrunk, Jr., Greenberg Traurig, Ernest L. Greer, Susan P. Langford, William H. McLean IV*, for appellee.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, Alfred L. Evans, Jr., Assistant Attorney General*, amici curiae.