### A09A0262. MOORE v. MOORE-McKINNEY.
(678 SE2d 152)

ADAMS, Judge.

Anthony B. Moore and Janeene H. Moore-McKinney ("McKinney") married in 1994 and divorced in 2002. Legal custody of their two minor children was awarded to Moore and McKinney, jointly, and McKinney was designated as primary physical custodian. On February 6, 2008, Moore filed a petition in superior court to modify the divorce decree's visitation schedule. Following an evidentiary hearing, the trial court issued its final order of modification and awarded attorney fees to McKinney.

On appeal, Moore contends that the trial court erred in prevent-

ing him from introducing evidence of McKinney's mental health history, altering his Wednesday visitation schedule, refusing to change the visitation drop-off location, and imposing restrictions on his ability to carry a weapon. Moore further contends that the trial court erred (i) in refusing to accept his parenting plan, (ii) in awarding attorney fees to McKinney, (iii) in failing to award him costs of litigation, and (iv) in requiring he pay the cost of preparing the record for appeal. For the reasons set forth below, we find: (i) that the final order of modification incorrectly reflected the parties' agreement as to Moore's Wednesday visitation schedule, and that the order be corrected upon remand; (ii) that the order failed to incorporate a parenting plan, which is mandated by OCGA § 19-9-1, and that a parenting plan be incorporated into the order upon remand; and (iii) that the order's award of attorney fees to McKinney be vacated and that the issue of fees and expenses be reconsidered by the trial court on remand. We otherwise find no merit in Moore's claims of error.

1. As a threshold issue, we address McKinney's claim that Moore's direct appeal of the trial court's final order of modification was improper.[1] McKinney argues that Moore was required to follow the discretionary appeal procedure set forth in OCGA § 5-6-35, and that his failure to do so requires that this appeal be dismissed for lack of jurisdiction. We disagree.

"Unless otherwise provided by law, an appeal may be taken to the Supreme Court or the Court of Appeals by filing with the clerk of the court wherein the case was determined a notice of appeal." OCGA § 5-6-37. OCGA § 5-6-34 (a) further provides that "[a]ppeals may be taken to the Supreme Court and the Court of Appeals from the following judgments and rulings of the superior courts," including, among others, final judgments "except as provided in Code Section 5-6-35"[2] and, under the recently enacted OCGA § 5-6-34 (a) (11), "[a]ll judgments or orders in child custody cases including, but not limited to, awarding or refusing to change child custody or holding or declining to hold persons in contempt of such child custody judgment or orders."

McKinney argues that this is not a child custody case, and so

---

[1] Moore filed his petition to modify visitation with the superior court on February 6, 2008. Accordingly, the 2007 amendments to OCGA §§ 5-6-34 and 5-6-35 apply. "This Act shall become effective on January 1, 2008, and shall apply to all child custody proceedings and modifications of child custody filed on or after January 1, 2008." Ga. L. 2007, p. 554, § 8. The trial court filed its final order of modification on April 16, 2008, and Moore filed his notice of direct appeal with the clerk of the superior court on April 30, 2008. Although Moore appealed to our Supreme Court, the Supreme Court transferred the appeal to this Court upon finding that the appeal did not involve divorce or alimony, but post-divorce visitation rights.

[2] OCGA § 5-6-34 (a) (1).

does not fall within the purview of OCGA § 5-6-34 (a) (11). It is true that Moore's petition was for modification of the divorce decree's visitation schedule, and visitation rights do not equal custody. See *Atkins v. Zachary*, 243 Ga. 453, 454 (254 SE2d 837) (1979). However, a "change in visitation amounts to a change in custody in legal contemplation since visitation rights (sometimes called visitation privileges) are a part of custody." (Citation and punctuation omitted.) *Facey v. Facey*, 281 Ga. 367, 369 (2) (638 SE2d 273) (2006). See also *Katz v. Katz*, 264 Ga. 440, 441 (445 SE2d 531) (1994) ("visitation is an integral part of custody"); *Nodvin v. Nodvin*, 235 Ga. 708 (221 SE2d 404) (1975); *Daugherty v. Murphy*, 225 Ga. 588 (2) (170 SE2d 428) (1969) ("visitation privileges are a part of custody").[3] We conclude that Moore's petition was therefore a "child custody case" for purposes of OCGA § 5-6-34 (a) (11).

Nevertheless, we must consider whether this case remains subject to OCGA § 5-6-35.

> [A]n application for appeal is required when the "underlying subject matter" is listed in OCGA § 5-6-35 (a). Therefore, the discretionary application procedure must be followed, even when the party is appealing a judgment or order that is procedurally subject to a direct appeal under OCGA § 5-6-34 (a).

(Citations omitted.) *Rebich v. Miles*, 264 Ga. 467, 468 (448 SE2d 192) (1994). See also *Ferguson v. Composite State Bd. of Med. Examiners*, 275 Ga. 255, 256-257 (1) (564 SE2d 715) (2002); *Best Tobacco, Inc. v. Dept. of Revenue*, 269 Ga. App. 484, 485 (604 SE2d 578) (2004).

Under the previous version of OCGA § 5-6-35 (a) (2), this case would have been subject to the discretionary appeal procedure because the statute specifically included child custody cases.[4] The General Assembly, however, removed all references to child custody cases in the amended version of OCGA § 5-6-35 (a) (2), as applicable

---

[3] We note that, for purposes of OCGA § 5-6-35 (a) (2), as that statute was previously in effect, we considered cases involving visitation privileges to constitute child custody cases. See *Mitchell v. Purser*, 178 Ga. App. 267 (342 SE2d 753) (1986); *Burnett v. Coleman*, 170 Ga. App. 394 (317 SE2d 546) (1984). We also find it persuasive that for purposes of the Child Custody Intrastate Jurisdiction Act, " 'Custody' includes visitation rights." OCGA § 19-9-22 (1).

[4] Before the 2007 amendment, OCGA § 5-6-35 (a) (2) included
[a]ppeals from judgments or orders in divorce, alimony, child custody, and other domestic relations cases including, but not limited to, granting or refusing a divorce or temporary or permanent alimony, awarding or refusing to change child custody, or holding or declining to hold persons in contempt of such alimony or child custody judgment or orders.

YALE LAW LIBRARY

here.[5] The language of OCGA § 5-6-35 (a) (2) continues to refer to "other domestic relations cases . . . not limited to . . ." the specific types of domestic relations cases enumerated therein. At least as a matter of general classification, child custody cases are domestic relations cases.[6] It is thus unclear what the General Assembly intended by its amendment to OCGA § 5-6-35 (a) (2).

"In resolving this issue, we look to the literal language of the statute, the rules of statutory construction and rules of reason and logic, the most important of which is to construe the statute so as to give effect to the legislature's intent." *State v. Nix*, 220 Ga. App. 651, 652 (1) (469 SE2d 497) (1996). "In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). The literal language of OCGA § 5-6-35 (a) (2), as amended, suggests that an appeal in any case classified as a domestic relations case is subject to the discretionary appeal procedure. Further, in *Leonard v. Benjamin*, 253 Ga. 718-719 (324 SE2d 185) (1985), our Supreme Court compared OCGA § 5-6-35 (a) (2), as in effect before the 2007 amendment at issue here, to the preceding version of the statute, and found it was the intent of the legislature to add child custody habeas corpus actions to the purview of OCGA § 5-6-35, even though such cases were not specifically enumerated. See id. at 719. The import of *Leonard* is that the legislature intended the then applicable version of OCGA § 5-6-35 (a) (2) to be interpreted broadly in light of the change in the law to add language including "other domestic relations cases," language which remains in the current version of the statute. See OCGA § 5-6-35 (a) (2); *Leonard*, 253 Ga. at 718-719. See also *Walker v. Estate of Mays*, 279 Ga. 652, 653 (1) (619 SE2d 679) (2005) (appeals in domestic relations cases must be brought by discretionary appeal).

Notwithstanding the foregoing, a comparison of the old law to the new law shows that, rather than expanding the operation of the statute, as was the intent of the legislature in the version of the statute at issue in *Leonard*, in its 2007 amendment the legislature pared OCGA § 5-6-35 (a) (2) by omitting all references to child custody cases. Simultaneously, and importantly in our view, the General Assembly modified OCGA § 5-6-34 (a) by adding OCGA § 5-6-34 (a) (11), which provides for a direct appeal from child custody

---

[5] Appeals which must be taken by application now include "[a]ppeals from judgments or orders in divorce, alimony, and other domestic relations cases including, but not limited to, granting or refusing a divorce or temporary or permanent alimony or holding or declining to hold persons in contempt of such alimony judgment or orders." OCGA § 5-6-35 (a) (2).

[6] Provisions governing child custody proceedings, OCGA § 19-9-1 et seq., appear in Chapter 9 of Title 19, "Domestic Relations."

cases. The logical conclusion to be drawn from these changes to pre-existing law is that the legislature intended for child custody cases to be treated differently from other domestic relations cases for purposes of appeals. Accordingly, we find that it was the intent of the General Assembly to remove child custody cases from the operation of OCGA § 5-6-35 (a) (2) when it excised references to such cases from the statute. To rule otherwise would be to ignore the apparent intent of the legislature while affording no practical effect to its 2007 amendment of OCGA § 5-6-35 (a) (2). See, e.g., *Effingham County Bd. of Tax Assessors v. Samwilka, Inc.*, 278 Ga. App. 521, 522 (629 SE2d 501) (2006) ("it is not presumed that the legislature intended to enact meaningless language") (citation omitted); *Nix*, 220 Ga. App. at 652 (1) ("[w]here the literal language does not square with reason or intent, then the literal must yield") (citation and punctuation omitted). It follows that since Moore appeals from a final order in his child custody case, his direct appeal is proper and not subject to dismissal as urged by McKinney.

2. (a) Moore contends that the trial court erred in preventing him from introducing evidence of McKinney's mental health history. We disagree.

While cross-examining McKinney, Moore began an apparent question by stating[7] "you had to seek the help of a mental health professional. . . ." McKinney's counsel objected on the grounds that the issue was not relevant. The trial court sustained the objection and indicated its belief that Moore was asking about events that were 12 years old. Moore represented that he had only been trying to lay a foundation, and then proceeded to ask McKinney if she had tried to commit suicide. When it was revealed that Moore was asking about events in 1989, the trial court again sustained an objection.

"Evidence is relevant if it logically tends to prove, disprove, or shed light upon any material fact at issue in a case." *Marshall v. State*, 275 Ga. 740, 742 (5) (571 SE2d 761) (2002). Citing OCGA § 19-9-3 (a) (4) (B) and (D), Moore argues that the trial court was required to consider McKinney's prior acts of violence and contends that McKinney's "mental health history . . . caused other prior acts of domestic violence against him." OCGA § 19-9-3 (a) (4) is expressly applicable where the trial court makes a finding of the existence of family violence, but it did not do so in this case. See *Welch v. Welch*, 277 Ga. 808, 809-810 (596 SE2d 134) (2004). Assuming that McKinney's alleged past acts of violence were nevertheless relevant, whether McKinney had previously sought the help of a mental

---

[7] Moore was acting pro se during the hearing and is acting pro se for purposes of this appeal.

health professional or had attempted to commit suicide in 1989 was not probative of whether she committed acts of violence against other persons or of any other material issue in the case. The trial court did not abuse its discretion in refusing to allow the evidence.

(b) Moore further claims that the trial court erred (i) in allowing the drop-off visitation exchange location to remain at McKinney's residence, and (ii) in removing one hour of his Wednesday parenting time when the children were not in school. In applicable part, the divorce decree provided that Moore was responsible for transporting the children to and from visits. Moore had done this by picking up and dropping off the children at McKinney's residence. The final order of modification provided that while the children were in school, Moore would pick up the children from school, and that when the children were not in school, Moore would pick up the children at the Barnes and Noble on Barrett Parkway. In both cases, Moore was required to drop the children off at McKinney's residence.

The divorce decree also provided that Moore "shall have the children every Wednesday from either [5:00 p.m.] or [6:00 p.m.] to [8:00 p.m.] as his work will allow. The father will notify the mother of his intention one time and continue that arrangement until a work routine change occurs."[8] The father had elected thereunder to take the children at 5:00 p.m. In the final order of modification, the trial court provided that Moore "shall also have the children every Wednesday from 5:00 p.m. when the children are in school, or from 6:00 p.m., when the children are not in school, to 8:00 p.m."

"Modification of child visitation rights is a matter of discretion with the trial court." *Parker v. Parker*, 242 Ga. 781 (251 SE2d 523) (1979). Although Moore portrays himself as a victim of family violence and the trial court's ruling as failing to protect him, the trial court's ruling is consistent with its charge of determining what was in the best interests of the children. See OCGA § 19-9-3 (a) (2). It is true that "[t]he judge shall consider as primary the safety and well-being of the child and of the parent who is the victim of family violence." OCGA § 19-9-3 (a) (4) (A). In view of the evidence, however, the trial court was not required to find, nor did it find, that Moore was the victim of family violence. The evidence does establish that when Moore and McKinney come into contact that conflict often follows. The trial court's modification order reduces the opportunity for such conflict in the presence of the children, notwithstanding that Moore was required to continue to drop the children off at

---

[8] The father was afforded other visitation, including every other weekend from Friday at 6:00 p.m. to Sunday at 6:00 p.m.

McKinney's residence. We find no abuse of discretion.

We agree with Moore, however, that the trial court erroneously modified his Wednesday visitation hours. McKinney does not contend that this was a matter in which the trial court exercised its discretion. Rather, she maintains that Moore agreed to the change, but she fails to cite to the record or the transcript to support this assertion.[9] Moore, on the other hand, cites directly to the hearing transcript, which shows a discussion between Moore, McKinney's counsel, and the trial court at the end of the hearing which is consistent with the parties, with the express approval of the trial court, having agreed that rather than either 5:00 p.m. or 6:00 p.m., the Wednesday pick-up time would be 5:00 p.m., and no exceptions were discussed.[10] Under the circumstances, the order's provision as to the Wednesday visitation schedule, to the extent that it reflected that the pick-up time would be 6:00 p.m. when the children were not in school, was not a valid exercise of the trial court's discretion but a mistake in reflecting a matter agreed upon by the parties. See generally OCGA § 19-9-5 (a) (parents may present an agreement "respecting any and all issues concerning custody of the child").

3. Moore contends that the trial court erred in refusing to accept his parenting plan. We disagree, but conclude that the trial court erred in not incorporating any parenting plan into its final order.

Moore submitted a parenting plan on the day of the hearing[11] and asked that the trial court adopt his plan. McKinney did not submit a parenting plan. The trial court did not adopt Moore's parenting plan in its final order, nor did the order expressly incorporate a parenting plan.

Although Moore did not request a change which would alter the award of joint legal custody of the children, his request for modification of visitation did involve the custody provisions of the divorce decree. See *Facey*, 281 Ga. at 369 (2). Accordingly, we agree with Moore that the provisions of OCGA § 19-9-1 (a), which require the parties to submit parenting plans in custody and "modification actions," and contemplate the inclusion of a parenting plan in legal

---

[9] Our independent review of the hearing transcript reflects that although the parties initially represented to the trial court that they had reached some agreements as to visitation, their subsequent representations evidenced disagreement as to what they had previously agreed. A change to the Wednesday pick-up times was not part of the initial discussion. Further, Moore's parenting plan does not show that he agreed to a change in the Wednesday visitation schedule consistent with the trial court's final order.

[10] The trial court asked the parties to "nail . . . down" whether the pickup time should be 5:00 p.m. or 6:00 p.m., and subsequently states "that should work. 5:00 o'clock," after which McKinney's counsel states, "[t]hat works," and Moore remained silent.

[11] There is no specific time provided for submission of the parenting plan. "It shall be in the judge's discretion as to when a party shall be required to submit a parenting plan to the judge." OCGA § 19-9-1 (a).

actions "involving" custody, applied here.[12] Nevertheless, although McKinney did not file a parenting plan, and Moore moved the trial court to adopt his parenting plan, the trial court was not required to accept Moore's plan. "Failure to comply with filing a parenting plan *may* result in the judge adopting the plan of the opposing party if the judge finds such plan to be in the best interests of the child." (Emphasis supplied.) OCGA § 19-9-1 (c). Further, the trial court did not summarily reject Moore's parenting plan, as Moore asserts. Rather, in light of OCGA § 19-9-1 (c), the trial court correctly maintained that it was required to act in the best interests of the children and that it was not obligated to adopt the father's plan by default. The trial court did not abuse its discretion in refusing to accept the father's parenting plan, especially as the plan was inconsistent with the final order of modification and contained provisions which the trial court was not required to conclude were in the best interests of the children.[13]

Moore asks that if we do not order the trial court to adopt his parenting plan that we remand the case with instructions that the trial court make findings of fact and conclusions of law addressing why Moore's plan was detrimental to the children. However, OCGA § 19-9-1 does not contemplate that the trial court explain why it accepted or rejected a parenting plan. Moore did file a motion for findings of fact and conclusions of law prior to the hearing, but pretermitting whether the final order otherwise complied with the request, the issues raised by OCGA § 19-9-1 are collateral to the modification proceeding, and we will not require the trial court to make explicit findings of fact and conclusions of law as to why it accepted or failed to accept a particular parenting plan. Findings "need be made only on issues necessary to a disposition of the cases and upon which the judgment was entered." *Spivey v. Mayson*, 124 Ga. App. 775, 776-777 (186 SE2d 154) (1971).

---

[12] OCGA § 19-9-1 (a) provides:

Except when a parent seeks emergency relief for family violence pursuant to Code Section 19-13-3 or 19-13-4, in all cases in which the custody of any child is at issue between the parents, each parent shall prepare a parenting plan or the parties may jointly submit a parenting plan. It shall be in the judge's discretion as to when a party shall be required to submit a parenting plan to the judge. A parenting plan shall be required for permanent custody and modification actions and in the judge's discretion may be required for temporary hearings. The final decree in any legal action involving the custody of a child, including modification actions, shall incorporate a permanent parenting plan.

[13] For instance, the plan provided that when one child reached the age of 11, the father would automatically and without judicial consideration become the sole physical custodian of the child. See *Scott v. Scott*, 276 Ga. 372, 375 (578 SE2d 876) (2003) (self-executing change of custody provisions that fail to give paramount import to the child's best interest violate public policy).

Moore further contends that the trial court erred in light of the requirement that "[t]he final decree in any legal action involving the custody of a child, including modification actions, shall incorporate a permanent parenting plan." OCGA § 19-9-1 (a). This provision cannot be logically extended to require the trial court to incorporate a particular party's parenting plan on the grounds that it is the only plan submitted. Nevertheless, the trial court's final order does not incorporate a parenting plan and the statute mandates without exception that one be incorporated. Accordingly, we are constrained to remand the case with instructions that the trial court incorporate a parenting plan into its final order consistent with the requirements of OCGA § 19-9-1 and the divorce decree, as modified by the final judgment. See OCGA § 19-9-1 (b).

4. During the hearing, McKinney asked for attorney fees on grounds that Moore had unnecessarily expanded the litigation. Following argument, the trial court concluded that Moore had unnecessarily expanded the litigation, that the fees incurred by McKinney's attorney were reasonable, stated its intent to award attorney fees to McKinney in the amount of $3,750, and subsequently made the award in its final order. The trial court considered but did not award Moore expenses of litigation, as Moore requested. Moore claims that the trial court erred (i) in awarding attorney fees to McKinney and (ii) in failing to award him his litigation expenses.

The trial court did not specifically state the statutory basis for its fee award in its final order or during the hearing, although it appears that, given McKinney's motion and argument, she requested fees under OCGA § 9-15-14 (b). In its final order, however, the trial court makes no findings which would authorize an award of attorney fees against Moore under OCGA § 9-15-14. See *Cason v. Cason*, 281 Ga. 296, 300 (3) (637 SE2d 716) (2006) ("[a]n order awarding attorney fees under OCGA § 9-15-14 must include findings of conduct that authorize the award"). During the hearing, the trial court found that Moore had expanded the litigation by "mak[ing] it more difficult than it ought to be," but made no findings as to Moore's conduct that would support a fee award under OCGA § 9-15-14 (b). Compare *Franklin Credit Mgmt. Corp. v. Friedenberg*, 275 Ga. App. 236, 241 (2) (b) (620 SE2d 463) (2005) (although not recited in the written order, the trial court's determination during the evidentiary hearing that attorney fees were reasonable and necessary was sufficient as to that issue). Specifically, the trial court found only that "the problem . . . is . . . the way you've done everything you've done today, it's taken about four times as long as it should take. A lawyer would do it like that (snaps fingers)." Although Moore, who was acting pro se, may have been slower than an attorney, this is not a finding which shows that he "unnecessarily expanded the proceeding by other

improper conduct" as contemplated by OCGA § 9-15-14 (b).

McKinney points out that "[a] judgment right for any reason will be affirmed." *Waits v. Waits*, 280 Ga. App. 734, 736 (634 SE2d 799) (2006). This includes an attorney fee award. Id. We agree with McKinney that attorney fees were available to her under newly enacted OCGA § 19-9-3 (g),[14] which affords wide discretion to the trial court to award reasonable attorney fees and expenses in child custody actions "to be paid by the parties in proportions and at times determined by the judge." However, while "it is apparent [the trial court] exercised its discretion in making [the attorney fee] award," we cannot say it is apparent that the trial court "would have done so under [OCGA § 19-9-3 (g)]." *Shapiro v. Lipman*, 259 Ga. 85, 86 (377 SE2d 673) (1989). Unlike OCGA § 9-15-14 (b), a fee award under OCGA § 19-9-3 (g) would not necessarily be focused on Moore's conduct. Thus, it is not apparent that the trial court would have awarded fees under OCGA § 19-9-3 (g), especially in light of McKinney's failure to file a parenting plan. Accordingly, we will not affirm the fee award on grounds that it is right for any reason. Rather, that portion of the trial court's order awarding attorney fees to McKinney is vacated, and "the issue of attorney fees must be remanded for an explanation of the statutory basis for the award and any findings necessary to support it." *Cason*, 281 Ga. at 300. In light of our findings here and in Division 3, the trial court is also instructed to reconsider Moore's request for expenses of litigation.

5. Moore claims that the trial court erred in imposing restrictions on his ability to carry a weapon in his vehicle or person. We disagree.

According to McKinney, on one occasion Moore "pulled [a] gun out on [her]" when he was picking up the children. The police were called,[15] and they located a gun in Moore's glovebox, with bullets in the magazine, and they determined that Moore had a permit for the weapon. Officers investigated further, including questioning witnesses, but "couldn't prove either way whether it was an act of aggression or [the gun] just fell out of the glove compartment. . . ."

During the hearing, the trial court indicated that he was contemplating ordering that "nobody possess a firearm . . . during the exercise of visitation," but the final order succinctly provides: "The parties will not have any weapons in their possession when exchanging the children." The trial court was entitled to conclude that this restriction was in the children's best interests. Further, the

---

[14] We disagree with McKinney that this is a family violence action under which fees were available pursuant to OCGA § 19-13-4 (a).

[15] Moore's request to supplement the record with the police incident report is denied.

order does not infringe, as Moore insists, "[t]he right of the people to keep and bear arms." *Sturm, Ruger & Co. v. City of Atlanta*, 253 Ga. App. 713, 718 (560 SE2d 525) (2002) (quoting Art. I, Sec. I, Par. VIII of the Georgia Constitution of 1983). Moore's ownership of a firearm is not prohibited, and his possession of a firearm is not restricted except in the context of a narrowly tailored condition of visitation justified by the evidence. "In awarding visitation rights, a trial court is authorized to impose such restrictions as the circumstances warrant." *Woodruff v. Woodruff*, 272 Ga. 485, 488 (1) (531 SE2d 714) (2000). Compare *Rawcliffe v. Rawcliffe*, 283 Ga. App. 264, 265-266 (2) (641 SE2d 255) (2007) (ban on defendant's possession or ownership of firearms not authorized as relief under a protective order). We find no error.

6. Lastly, Moore claims that because this was a "family violence visitation modification," the trial court erred in assigning him the costs of preparing the record for appeal. To show that he had been assessed costs, Moore references a "notice of trial court cost," but the document does not appear in the record. Further, Moore's notice of appeal requests that a notice of cost be sent to Moore by the clerk of the court, not the trial court, and Moore does not otherwise establish that there is a ruling by the trial court on this issue. Compare *Rewis v. Shaw*, 208 Ga. App. 876, 877 (432 SE2d 617) (1993) (clerk, who was the real party in interest, appealed from trial court's grant of a party's motion regarding costs of preparing record for appeal). Accordingly, there is nothing for this Court to review.

In light of the foregoing, we vacate that portion of the trial court's final order awarding attorney fees to McKinney and remand with direction that (i) the order be corrected so that the third sentence in the second paragraph provides: "The Plaintiff shall also have the children every Wednesday from 5:00 p.m. to 8:00 p.m."; (ii) a parenting plan in compliance with OCGA § 19-9-1 be incorporated therein; and (iii) the trial court reconsider the issue of attorney fees and expenses of litigation. Following the entry of a new judgment, either party may appeal on grounds that the parenting plan failed to conform to the requirements of OCGA § 19-9-1 and the losing party may appeal any award of fees or expenses. See *Wyatt v. Hertz Claim Mgmt. Corp.*, 236 Ga. App. 292, 294 (2) (511 SE2d 630) (1999).

*Judgment affirmed in part and vacated in part, and case remanded with direction. Blackburn, P. J., and Doyle, J., concur.*

DECIDED MAY 6, 2009.

Anthony B. Moore, *pro se*.

*Baskin & Baskin, Carol S. Baskin, Kristen E. Kubala*, for appellee.