A09A0307. GEORGIACARRY.ORG, INC. et al. v. CITY OF ROSWELL et al.

(680 SE2d 697)

ELLINGTON, Judge.

As part of GeorgiaCarry.Org, Inc.'s gun rights advocacy work, the organization and some of its members (collectively, "Georgia-Carry") filed this lawsuit to prevent the cities of Atlanta, Roswell, and Sandy Springs from enforcing local ordinances that prohibited carrying firearms in city parks. In one order, the Superior Court of Fulton County enjoined the enforcement of Atlanta's ordinance, as being preempted by state law, and granted GeorgiaCarry's motion for partial summary judgment against Atlanta. The trial court determined, on the other hand, that GeorgiaCarry's challenges to the ordinances of Roswell and Sandy Springs are moot because their ordinances, as amended during the litigation, merely cite to the state law that prohibits carrying firearms to public gatherings. Based on that determination, the trial court, in two other orders, granted the motions to dismiss, which were converted into motions for summary judgment, filed by Roswell and Sandy Springs.

GeorgiaCarry appeals the orders granting summary judgment in favor of Roswell and Sandy Springs, contending that its challenges to the cities' ordinances are not moot because state law plainly preempts *any* municipal regulation concerning the carrying of firearms, even regulations that do not expand the restrictions on carrying firearms that are imposed by state law. As explained below, we conclude that the trial court correctly determined that GeorgiaCarry's challenges to the ordinances of Roswell and Sandy Springs are moot. Accordingly, we affirm the orders granting summary judgment in favor of Roswell and Sandy Springs.

GeorgiaCarry also appeals the order that granted its motion for

partial summary judgment against Atlanta, contending the trial court erred in entering a final judgment and filing a civil case final disposition form, thereby dismissing sua sponte GeorgiaCarry's remaining claims against Atlanta. As explained below, we conclude that the trial court's order resolved only those claims that were raised in GeorgiaCarry's motion and that GeorgiaCarry's claims for civil rights violations and attorney fees have not been otherwise addressed. Because there has been no final disposition of Georgia-Carry's case against Atlanta, the filing of a civil case final disposition form was not authorized. Accordingly, although GeorgiaCarry has shown no error in the summary judgment order, we remand this case with the direction that the clerk remove from the file of this case the civil case final disposition form pertaining to Atlanta.

In order to prevail on a motion for summary judgment under OCGA § 9-11-56,

> the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations omitted.) *Benton v. Benton,* 280 Ga. 468, 470 (629 SE2d 204) (2006).

1. *GeorgiaCarry's claims against Roswell and Sandy Springs.* GeorgiaCarry contends that state law plainly preempts any municipal regulation concerning the carrying of firearms, even regulations that do not limit the carrying of firearms more than is done by state statute. In addition, GeorgiaCarry contends that the ordinances of Roswell and Sandy Springs constitute municipal regulation concerning the carrying of firearms. Based on these premises, GeorgiaCarry contends that its challenges to the cities' ordinances are not moot and, therefore, that the trial court erred in granting the cities' motions for summary judgment on its claims for a declaratory judgment and for an injunction prohibiting any expenditure of public funds or other action to enforce the ordinances (Counts 1, 2, 3, 5, and 6).[1]

---

[1] GeorgiaCarry does not argue that the trial court erred in granting summary judgment

When GeorgiaCarry filed this lawsuit in 2007, Roswell and Sandy Springs both had ordinances that made it a violation to have or possess a firearm in a city park. Under five alternative theories, GeorgiaCarry sought a declaration that the ordinances were void because the regulation of the carrying of firearms is expressly preempted by state law. In a statute adopted in 2005, the Georgia General Assembly declared that the regulation of firearms is "an issue of general, state-wide concern." OCGA § 16-11-173 (a) (1).[2] Except in certain situations not at issue here,[3] no municipality "shall regulate in any manner" the carrying of firearms. OCGA § 16-11-173 (b) (1). Although a state statute makes it a misdemeanor to carry a firearm to a public gathering,[4] a person licensed to carry a firearm is generally otherwise expressly permitted by state law to carry a firearm in any park.[5]

Approximately three months after GeorgiaCarry filed this action, this Court held, in another case initiated by GeorgiaCarry, that by its plain language OCGA § 16-11-173 preempted a county ordinance that prohibited firearms in county recreation facilities and sports fields. *GeorgiaCarry.Org v. Coweta County*, 288 Ga. App. 748, 749 (655 SE2d 346) (2007). In response to this decision, Roswell and Sandy Springs amended their ordinances in February 2008 to comply with OCGA §§ 16-11-127 and 16-11-173. In a section that specifies

---

in favor of Roswell and Sandy Springs on Count 8 of the complaint, which asserts a claim for damages under 42 USC § 1983. Accordingly, the trial court's ruling in this regard stands affirmed. *Wesley Chapel Foot & Ankle Center v. Johnson*, 286 Ga. App. 881, n. 1 (650 SE2d 387) (2007). Because GeorgiaCarry has no remaining claim for damages against Roswell and Sandy Springs, GeorgiaCarry's claims of error regarding its claim against these defendants for attorney fees under OCGA § 13-6-11 are moot. See *Brown v. Baker*, 197 Ga. App. 466, 467 (2) (398 SE2d 797) (1990) ("OCGA § 13-6-11 does not create an independent cause of action. That statute merely establishes the circumstances in which a plaintiff may recover the expenses of litigation as an additional element of his damages.") (citation omitted). Cf. OCGA § 9-15-14 (providing circumstances when litigation costs and attorney fees may be assessed for frivolous actions and defenses).

[2] See Ga. L. 2005, p. 613, § 1.

[3] See OCGA § 16-11-173 (c) (permitting regulation regarding carrying of firearms by local government employees in the course of their employment); (d) (permitting regulation regarding required gun ownership by certain residents); (e) (permitting regulation limiting or prohibiting discharge of firearms within city or county).

[4] Except as provided in Code Section 16-11-127.1 [(regarding carrying weapons within school safety zones, at school functions, or on school property)], a person shall be guilty of a misdemeanor when he or she carries to or while at a public gathering any explosive compound, firearm, or knife designed for the purpose of offense and defense.

OCGA § 16-11-127 (a).

[5] A person licensed or permitted to carry a firearm by this part shall be permitted to carry such firearm, subject to the limitations of [OCGA §§ 16-11-126 through 16-11-135], in all parks . . . including all publicly owned buildings located in such parks . . . ; provided, however, that a person shall not carry a firearm into a place prohibited by federal law.

OCGA § 16-11-127 (e).

activities that are prohibited in parks and public places, Roswell's ordinance now provides:

> Weapons. It shall be unlawful for any person to possess any explosive substance (including fireworks) in any of the city parks, unless written permission for such has been authorized by the mayor and city council. It shall further be unlawful for any person to discharge any firearm within city parks unless expressly allowed by section 13.1.3 of the Roswell City Code. *Pursuant to OCGA § 16-11-127, it is unlawful to carry a firearm to a public gathering within the city.*

(Emphasis supplied.) Code of Ordinances of the City of Roswell, Section 14.2.4 (Ordinance Number 2008-02-02, February 4, 2008). In a section that regulates public conduct in parks, Sandy Springs' ordinance now provides:

> Firearms.
> (a) It shall be unlawful for any person to possess any explosive substance (including fireworks) in any of the city parks, unless written permission for such has been authorized by the mayor and city council.
> (b) It shall be unlawful for any person to discharge any firearm within city parks unless expressly authorized by the mayor and city council. *Pursuant to OCGA § 16-11-127, it is unlawful to carry a firearm to a public gathering, as defined in OCGA § 16-11-127, within the city.*

(Emphasis supplied.) Code of Ordinances of Sandy Springs, Section 42-41 (Ordinance Number 2008-02-06, February 5, 2008).

The trial court determined that GeorgiaCarry's challenges to the ordinances of Roswell and Sandy Springs are moot because their amended ordinances merely provide notice of the state law that prohibits carrying firearms to public gatherings. GeorgiaCarry contends that, even as amended, these ordinances create local violations, that is, that a person who carries a firearm to a public gathering in Roswell or Sandy Springs would potentially be violating both the state statute, OCGA § 16-11-127 (a), and the city ordinance. Because municipal courts can impose punishment for ordinance violations,[6] GeorgiaCarry contends, these ordinances constitute imper-

---

[6] See OCGA §§ 36-30-8 (conferring on municipal corporations "[t]he right and power to

missible regulation of the carrying of firearms. Because the ordinances' statement "it is unlawful to carry a firearm to a public gathering" is modified by the phrase "[p]ursuant to OCGA § 16-11-127," we disagree.

When an ordinance states without qualification that certain conduct "shall be unlawful," it is evident that the prohibition arises from the ordinance itself, rather than from a state statute or some other source. When the statement in an ordinance that certain conduct "shall be unlawful" is modified by the phrase "pursuant to" a specified state statute, on the other hand, the express statement that conduct is prohibited pursuant to the state statute negates any inference that the conduct is prohibited pursuant to the ordinance.[7] In such a case, we conclude that no local violation is created. Arguably, it serves no purpose to enact an ordinance that does no more than report that certain conduct is prohibited by state law; the existence of the state statute already puts the public on notice of the prohibition.[8] Still, such a superfluous notice does not itself regulate the conduct merely because it is embedded in a local ordinance. We conclude that the current versions of the ordinances of Roswell and Sandy Springs at issue do not create a local violation. Based on this, we conclude that the ordinances do not regulate the carrying of firearms in contravention of state preemption. The trial court correctly determined that the ordinances are not void on this basis. The amendment of these ordinances rendered moot GeorgiaCarry's objections, however meritorious, to previous versions of the ordi-

---

organize work gangs or other means of confinement and to confine at labor therein, for a term not exceeding 30 days, persons convicted of violating the ordinances of municipal corporations"); 36-32-1 (c) (authorizing municipal courts to impose any punishment specified in local law up to the maximums specified by general law); 36-32-5 (authorizing municipal courts to impose fines upon persons convicted of ordinance violations, to sentence violators to community service work, or to impose a combination sentence); 36-35-6 (a) (2) (limiting sentences for ordinance violations to six months confinement and limiting fines for ordinance violations to $1,000).

[7] "It is a well-established canon of statutory construction that the inclusion of one implies the exclusion of others." (Citation omitted.) *Sturm, Ruger & Co. v. City of Atlanta*, 253 Ga. App. 713, 721 (560 SE2d 525) (2002). See also *Allen v. Wright*, 282 Ga. 9, 14 (3) (644 SE2d 814) (2007) (according to the maxims, " '[e]xpressum facit cessare tacitum' [if some things are expressly mentioned, the inference is stronger that those omitted were intended to be excluded] and its companion, the venerable principle, '[e]xpressio unius est exclusio alterius' [the express mention of one thing implies the exclusion of another]", a list of terms in a statute is presumed to be complete, and the omission of additional terms in the same class is presumed to be deliberate) (citations and punctuation omitted).

[8] See OCGA § 1-3-6 ("After they take effect, the laws of this state are obligatory upon all the inhabitants thereof. Ignorance of the law excuses no one."); *Webb v. State*, 68 Ga. App. 466, 469-470 (2) (23 SE2d 578) (1942) (regarding criminal offenses generally, the law presumes that the public knows what acts are criminalized by statute).

nances.[9] Accordingly, the trial court did not err in granting summary judgment in favor of Roswell and Sandy Springs on GeorgiaCarry's claims for a declaratory judgment and an injunction.

2. *GeorgiaCarry's claims against Atlanta.* GeorgiaCarry contends that the trial court implicitly dismissed sua sponte its claims against Atlanta for civil rights violations and attorney fees, when the court granted its motion for partial summary judgment on its other claims, directed the entry of a final judgment in its favor pursuant to OCGA § 9-11-54 (b),[10] and filed a civil case final disposition form. GeorgiaCarry contends that this was error because GeorgiaCarry did not receive notice that the court would consider dismissing its remaining claims and a hearing on those claims before dismissal.

The record shows that GeorgiaCarry moved for summary judgment only on its claims for a declaratory judgment and an injunction (Counts 1, 2, 3, 5, and 6). The trial court did not put GeorgiaCarry on notice that it might also dismiss or grant summary judgment against GeorgiaCarry on its remaining claim, Count 8,[11] and its prayer for attorney fees, nor did the court's order make any reference to those remaining claims. Thus, despite the court's entry of a final judgment on Counts 1, 2, 3, 5, and 6, the trial court summary judgment order cannot be deemed to have disposed of Count 8 and the prayer for attorney fees;[12] Atlanta concedes this point. Accordingly, GeorgiaCarry's argument presents no basis for reversing the trial court's summary judgment order.

GeorgiaCarry's argument raises the issue of the status of Count

---

[9] [A] case is moot when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights, and . . . mootness is a mandatory ground for dismissal. . . . [A] case which contains an issue that is capable of repetition yet evades review[, however,] is not moot because a decision in such a case would be based on existing facts or rights which affect, if not the immediate parties, an existing class of sufferers.

(Citations and punctuation omitted.) *Collins v. Lombard Corp.*, 270 Ga. 120, 121-122 (1) (508 SE2d 653) (1998).

[10] When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. OCGA § 9-11-54 (b).

[11] Count 4 did not pertain to Atlanta, and GeorgiaCarry had earlier withdrawn Count 7 as to all defendants.

[12] See *Aycock v. Calk*, 222 Ga. App. 763, 763-764 (476 SE2d 274) (1996) (a trial court may grant, sua sponte, a summary judgment only when the record supports such a judgment and after the court gives the party against whom summary judgment is rendered full and fair notice that the court intends to rule upon the merits of his claim and the opportunity to meet and attempt to controvert the assertions against him); *Frank Woods Constr. Co. v. Randi*, 177 Ga. App. 438, 439 (2) (339 SE2d 406) (1986) (where the defendants filed a motion for partial summary judgment, the trial court erred in granting summary judgment on all of the plaintiff's claims).

8 and its prayer for attorney fees, however, because of the filing of a "General Civil Case Final Disposition Form," which indicated that the case was terminated as to Atlanta by involuntary dismissal and summary judgment. We note that OCGA § 9-11-58 (b) requires the prevailing party (or the plaintiff, in certain circumstances), *not* the trial court itself, to file a civil case final disposition form.[13] The prescribed form does not provide for the trial court to execute the form before it is filed. OCGA § 9-11-133. Indeed, a superior court rule on the topic allows the clerk of court sua sponte to correct a form after it is completed by a party or the court.[14] We conclude that such a form, unsigned by the judge, cannot be deemed to have the force and effect of a ruling of the court or to expand the scope or import of a related judgment. Thus, despite the filing of a civil case final disposition form to the contrary, GeorgiaCarry's claims against Atlanta and for relief under 42 USC § 1983 (Count 8) and for attorney fees remain pending in the trial court.

Because there has been no final disposition of GeorgiaCarry's case against Atlanta, the filing of a civil case final disposition form was not authorized. Accordingly, we affirm the order granting partial summary judgment in favor of GeorgiaCarry against Atlanta but remand this case and direct that the Clerk of the Superior Court of Fulton County remove from the file of this case the civil case final disposition form pertaining to Atlanta.

*Judgment affirmed and case remanded with direction. Johnson, P. J., and Mikell, J., concur.*

DECIDED JULY 2, 2009.

*John R. Monroe*, for appellants.

---

[13] OCGA § 9-11-58 (b) ("As part of the filing of the final judgment, a civil case disposition form shall be filed by the prevailing party or by the plaintiff if the case is settled, dismissed, or otherwise disposed of without a prevailing party[.]").

[14] Any order disposing of a civil action presented for consideration to a judge by any attorney or party shall be accompanied by a completed civil case disposition form. If the order is prepared or reframed by the court, the court shall cause the civil case disposition form to be completed or corrected, if necessary. The civil case disposition form shall be sent to the clerk along with the relevant order to become part of the file for the case. The clerk shall require any attorney or party filing a voluntary dismissal or settlement of a civil action to complete a civil case disposition form. The form shall become part of the file for the case. The clerk shall use the specific type of disposition found on the completed civil case disposition form to enter the specific type of disposition upon the civil docket of the court, unless it appears to the satisfaction of the clerk by an inspection of the order that the type of disposition has been recorded in error. If the wrong type of disposition has been recorded, the clerk shall correct the civil case disposition form and enter the correct type of disposition upon the civil docket of the court.
Uniform Superior Court Rule 39.2.3.

*David B. Davidson, Elizabeth B. Chandler*, for appellees.
*Shannon L. Goessling, Stephen D. Morrison, Jr.*, amici curiae.